No. 54,370

MARTHA OLSON, *Appellant,* v. STATE HIGHWAY COMMISSION OF KANSAS (Secretary of Kansas Department of Transportation), and J. A. TOBIN CONSTRUCTION COMPANY, *Appellees.*

(679 P.2d 167)

Opinion filed March 24, 1984.

*R. Owen Watchous,* of Olathe, argued the cause and was on the brief for appellant.

*Lisa E. Schwinn,* staff attorney for the Kansas Department of Transportation, argued the cause, and *David G. Tittsworth,* chief counsel, was with her on the brief for appellee State Highway Commission.

*Jeffrey L. Lauersdorf,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and *Richard T. Merker,* of the same firm, was with him on the brief for appellee J. A. Tobin Construction Company.

The opinion of the court was delivered by

HOLMES, J.: Martha Olson, the plaintiff in an action against J. A. Tobin Construction Company (Tobin) and the State Highway Commission, now the Kansas Department of Transportation (KDOT), for damages to her real property resulting from a highway construction project, appeals from a decision of the district court granting summary judgment on the grounds plaintiff's claims were barred by the statute of limitations. The only issue before this court is whether the trial court was correct in its application of the statute of limitations.

Plaintiff's petition sought recovery from defendants on theories of negligence and strict liability. She claimed damage to a pond on her property, damage to the foundation and cistern of her new house, and the destruction of fences along part of her land. Reading the record in the light most favorable to the plaintiff, the party who defended against the motion for summary judgment, as we must on appeal (*McAlister v. Atlantic Richfield Co.,* 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 [1983]), the facts of this case are as follows.

Defendants' construction of the highway began in 1977. Evidently a portion of plaintiff's property, including her home, was purchased by the State for highway right-of-way. Kenneth Olson, plaintiff's son, began construction in the spring of 1978 of a new home for his mother on the remaining portion of the property. The concrete foundation for the new home was poured in April or May of 1978. Tobin, in its construction of the new highway, was conducting blasting operations at this same time within about one-eighth of a mile of plaintiff's construction. In May or June, Kenneth Olson discovered a hairline crack in the north wall of the new basement. He called this to the attention of the Tobin employee in charge of the dynamite operation and, after viewing it, the employee made representations to the effect they would return after the blasting was completed. Plaintiff construed this to mean representatives of Tobin or KDOT would

return at a later date to inspect and discuss any damage. The initial blasting continued throughout the summer of 1978 until August or September. Blasting was resumed in late 1978 and continued into 1979 with the last blasting being done in September, 1979. At its closest point the blasting occurred within one hundred feet of plaintiff's new home. When plaintiff and her son moved into the home April 1, 1979, they did not make any further inspections for damage to the foundation. However, in March, 1980, Kenneth Olson discovered fourteen or fifteen cracks in the foundation walls running from the ceiling to the floor. Upon completion of the blasting operations no one from Tobin or KDOT returned to talk to plaintiff or her son about the original damage. It is alleged that the additional cracking of plaintiff's basement walls occurred from the blasting operations carried on in late 1978 or early 1979.

Plaintiff also suffered damage to a one-acre pond which had been on her property since 1976. While the findings of the trial court are confused, Tobin evidently began construction of an elevated dirt fill to form the base of the highway in the spring or early summer of 1978. The testimony is conflicting whether the dirt fill was completed in September of 1978 or not until the spring of 1979. In either case a ditch resulted running from the highway fill to plaintiff's pond, carrying water, mud, soil and silt from the fill. This soil settled and accumulated in plaintiff's pond. When the pond was built in 1976, it was one acre in size, with a depth of ten to twelve feet. The erosion from defendants' fill caused an accumulation of four to six feet of dirt in the pond, at an estimated damage of $18,500.00. Due to the original depth of the pond and the gradual accumulation of silt, it was not discovered until late 1979 or early 1980.

Finally, plaintiff claims damages for two fences allegedly damaged by defendants. One was cut by a bulldozer and the other was buried under mud slides from the highway fill. Plaintiff had assumed the fences would be repaired when the highway construction was completed. When the construction was completed in 1980, the fences were not repaired or replaced.

Mrs. Olson originally filed suit against the defendants on October 29, 1980. Due to procedural difficulties the case was dismissed "for lack of proper prosecution" on December 3, 1981. It was refiled pursuant to K.S.A. 60-518 on December 16, 1981.

All parties agree that the appropriate statute of limitations is two years as provided in K.S.A. 60-513(*a*)(4) and that October 29, 1980, is the controlling filing date. The trial court granted summary judgment to defendants on the grounds that permanent injury to plaintiff's basement, pond and fences first occurred in the spring or summer of 1978 and therefore all damages were precluded because this action was not filed until October 29, 1980, more than two years from the initial injury to the property.

The major issue in this case is whether, under these facts, it was proper for the trial court to grant summary judgment against plaintiff on the ground her claims were barred by the statute of limitations. Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. When summary judgment is challenged on appeal, this court will read the record in the light most favorable to the party who defended against the motion for summary judgment. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶¶ 1, 2, and 4, 662 P.2d 1203 (1983). The record in this case consists of the depositions of Martha and Kenneth Olson, the deposition exhibits and the transcript of the proceedings from the first case and the pleadings, trial briefs and transcripts in the case being appealed.

We agree the applicable earliest date which would not be barred by the statute of limitations is October 28, 1978, and that the applicable period in this case is the two years defined by K.S.A. 60-513(*a*)(4). However, subsection (*b*) of that statute provides:

"[T]he cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes *substantial injury, or,* if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until *the fact of injury becomes reasonably ascertainable to the injured party,* but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action." (Emphasis added.)

The application of this statute in the case of an isolated act of negligence concurrently injuring another person or his property is clear — the two-year period begins to run from the date the act occurred and the injury was sustained. The focus is not, how-

ever, on the faulty act or condition itself, but on its effect. When there is an isolated act resulting in immediate injury not readily apparent to the innocent party, or when the injury itself is delayed for a period of time, the law is well settled that the limitation period is triggered not on the date of the wrongful act, but when the consequent injury is substantial or reasonably ascertainable. 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-513 (1979).

Perhaps the most difficult application of the limitation period is in a case such as the present, involving *continuing* wrongful acts or causative agents, working what is at first only slight injury, which increases in degree over time. Appellees contend that the cause of the injury, the blasting and the design and construction of the dirt fill, are permanent in that the blasting has ceased and the dirt fill is not subject to removal or abatement. They also contend that the injuries suffered by Mrs. Olson are permanent in that the cracks in the basement will not disappear or be corrected by the mere passage of time and that the same is true of the silt in the pond and the damaged fences. They totally ignore the provisions of K.S.A. 60-513(*b*) and assert the first moment of injury, no matter how slight, triggers the statute of limitations. The trial court agreed.

Appellant, on the other hand, contends the initial hairline crack and the initial infiltration of silt, while certainly permanent in nature, did not fall within the realm of substantial injury and were not reasonably ascertainable until additional injury occurred subsequent to the magic date of October 29, 1978. The injury to the fences, while perhaps more readily ascertainable, is subject to dispute as to when the injury occurred and whether Mrs. Olson was justified in her assumption the fences would be repaired before the work crews finally left the project. While the distinction between temporary and permanent damages was recognized as a viable concept as recently as our decision in *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, a careful review of our prior cases indicates that no hard and fast rule can be adopted as to when the damages are deemed permanent and when they are deemed temporary. In addition, some of our cases refer not only to the permanent or temporary nature of the damages but also the permanent or temporary nature of the causative factor. Each case must be considered in its own factual setting.

Many of our cases which have hinged on the dichotomy of permanent and temporary involve repeated flooding of crops and farmland. In *Gowing v. McCandless*, 219 Kan. 140, 547 P.2d 338 (1976), cited with approval in *McAlister*, this court stated:

"Where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, continuing or consequential in nature, it has been held that the limitation period starts to run only when the plaintiffs' land or crops are actually harmed by overflow, and for purposes of the statute of limitations, each injury becomes permanent. [Citations omitted.] This rule is especially applicable if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative condition, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages. [Citation omitted.]

"A number of our cases have permitted relief for damages caused by overflowing waters if brought within two years of the overflowing. [Citations omitted.]

"In the instant case the evidence does not show the cause of the injury to be permanent. In many cases injuries have been classified as temporary or recurring in nature when caused by an abatable nuisance or condition, or by defects which can be repaired or remedied at reasonable expense. Successive injuries of this nature have been held to give rise to separate and distinct causes of action. [Citation omitted.]

"It has frequently been said the principle upon which one is charged as a continuing wrongdoer is that he has a legal right, and is under a legal duty, to terminate the cause of the injury. [Citations omitted.]

"Under this rule the owner of land injured by overflows and poor drainage caused by an abatable condition or nuisance has the right to assume the condition or nuisance will be abated. Here the appellees presented evidence that the obstructions were not 'permanent.' That is to say, the obstructions could be removed from the drainage ditch. In a legal sense these obstructions were not 'permanent' because they were not approved by the state. Moreover, the appellees presented evidence that the appellants agreed to examine the drainage ditch and consider removing the obstructions. . . .

. . . . .

"Where permanent damages to the land are sought, and the evidence discloses permanent damages, the action claiming such damages must be brought within the two year statute of limitations. Thus in *Thierer v. Board of County Commissioners*, 212 Kan. 571, 512 P.2d 343, the cause of action for permanent damages to farmland was held to accrue when substantial injury was reasonably ascertainable." pp. 144-46.

Regardless of the permanent or temporary nature of the injuries to the Olson land, the determinative question in this case is when the statute of limitations began to run. The trial court concluded that plaintiff's causes of action accrued when any

injury first occurred, that being in the spring or summer of 1978. However, K.S.A. 60-513(*b*) provides that a cause of action shall not be deemed to have accrued until the act giving rise to the cause of action first causes *substantial* injury, or until the time the fact of injury (inferentially, the fact of substantial injury) becomes *reasonably ascertainable* to the injured party. In his comments on this statute, Judge Gard said:

"While the cause of action accrues at the time of the actual injury, the two-year statute of limitations does not necessarily begin to run at that time. In various types of injury it often cannot be reasonably ascertained as existing until some time after the commission of the wrongful act which causes it. . . . Injury to land and livestock from stream pollution and injury from subsidence as the result of mining operations may furnish examples of the operation of the rule here laid down. . . .

. . . .

"[T]he action may be brought within two years from the time the actual injury is discovered but not later than ten years from the time injury actually occurs. In other cases the negligent act may lie dormant in its effect indefinitely until something happens to connect it with injury, and only then does the statute of limitations begin to run. *There is no limitation period running from the time of the initial act of negligence unless the act of negligence and injury are simultaneous.*" (Emphasis added.) 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-513, pp. 23-26 (1979).

We have acknowledged and applied the provisions of K.S.A. 60-513(*b*) in a number of cases. See *Hecht v. First National Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649 (1971); *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974). We have also recognized that permanent damages to land may not arise instantly from a negligent act or, even if they do, the damages may not be readily apparent to the injured party. An action for permanent damages to real property shall not be deemed to accrue until "substantial injury is reasonably ascertainable." *Thierer v. Board of County Commissioners,* 212 Kan. 571, Syl. ¶ 2, 512 P.2d 343 (1973).

We believe that the trial court's conclusion plaintiff's causes of action accrued in early 1978 is belied by the record in this case. With regard to the blasting, it is not disputed defendants began their operations in spring, 1978, at which time plaintiff's son discovered *one* hairline crack in the new foundation to plaintiff's house. Certainly reasonable minds could differ over whether this one crack constituted *substantial* injury for the purposes of K.S.A. 60-513(*b*). Defendant Tobin has implicitly recognized the

minor nature of this initial injury by the following statement appearing in its brief:

"The continued blasting [after the spring of 1978] . . . only increased the amount of damages *from being slight,* to one being more substantial, but it did not affect the injury." (Emphasis added.)

A jury might well conclude that the blasting in late 1978 or in 1979 within one hundred feet of the basement was the cause of the additional cracking and that it was not until then that *substantial injury* occurred or became *reasonably ascertainable.*

The same may be said for the silt, dirt and mud in the pond. Even the trial court in its findings was confused as to when the dirt fill was commenced and completed. The court found that defendants began construction of the dirt fill in June of 1978, and then concluded soil from the fill had been washing into plaintiff's pond since April, 1978, at which time the cause of action accrued. Deposition testimony indicates the dirt fill may not have been completed until the spring of 1979. Assuming dirt or silt first entered the pond in the summer of 1978, there is no showing of when substantial injury occurred or when it became reasonably ascertainable. Again Tobin recognized the problem when it stated in its brief:

". . . the continued settling of mud from the fill only increased the amount of damages *from being slight,* to one being more substantial, but it did not affect the injury." (Emphasis added.)

The time of substantial injury to the fences is also not clear. One was damaged by a mudslide from the dirt fill and the other cut by workmen. The petition alleges the fence was cut in April, 1980.

Our statutes of limitation were not designed to force injured parties into court at the first sign of injury, regardless of how slight it might be, just because that injury and damages resulting therefrom may be permanent in nature. We have repeatedly held that where the evidence is in dispute as to when the fact of injury first became reasonably ascertainable to plaintiffs, it is an issue for determination by the trier of fact. *George v. W-G Fertilizer, Inc.,* 205 Kan. 360, 366, 469 P.2d 459 (1970). The same is true in determining when substantial injury first occurred. *Thierer v. Board of County Commissioners,* 212 Kan. 571. In *Hecht v. First National Bank & Trust Co.,* we said:

"Summary judgment may be proper on the affirmative defense of the statute of limitations where there is no dispute or genuine issue as to the time when the statute commenced to run. [*Citations omitted.*] But where the evidence is in dispute as to when substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact." 208 Kan. at 93.

It appears obvious that there remain major questions of fact which are in dispute. The defendants submitted their statement of uncontroverted facts which was accepted by the trial court as the basis for its ruling. The facts submitted, while admitted to be true by the plaintiff, included isolated statements taken out of context from the depositions. Plaintiff submitted additional allegedly uncontroverted facts which explained, modified or gave different meaning to those submitted by defendants. The court erred in considering only the isolated, abstract statements of the defendants and concluding from them that summary judgment should be entered.

The judgment granting summary judgment is reversed and the case remanded for further proceedings.