No. 78,725

FRANCIS and PHYLLIS DEISHER, *Appellants,* v. KANSAS
DEPARTMENT OF TRANSPORTATION, *Appellee.*

(958 P.2d 656)

Opinion filed April 24, 1998.

*James B. Jackson*, of Kansas City, Missouri, argued the cause, and *Joseph R. Borich, III*, of Leawood, was with him on the briefs for appellant.

*John W. Strahan*, first assistant attorney, Kansas Department of Transportation, argued the cause, and *Michael B. Rees*, chief counsel, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiffs filed an inverse condemnation action against the Kansas Department of Transportation (KDOT) alleging a loss of water to their well was caused by KDOT's actions. The district court found that plaintiffs' proper remedy was in tort rather than in inverse condemnation and granted summary judgment to KDOT. Plaintiffs appealed, claiming the district court erred in ruling that the plaintiffs could not bring an inverse condemnation action. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

In 1982, the State of Kansas filed a condemnation action to secure property rights from Spring Hill Community Church (Church) to assist in the reconstruction of Highway 169 south of Olathe, Kansas. KDOT states:

"The condemnation petition was for a permanent easement for controlled access right of way and removal of borrow material over and upon a tract of land that overwrote an existing road easement located in front of the subject tract. The supplemental easement would allow for highway construction, scooping of road ditches, the removal of several walnut trees and construction of an entrance located in the front of a residence located on the property."

In July 1982, the Church conveyed by warranty deed the tract of land the State required for the construction easement. The tract of land was then deleted from the condemnation action by court order on July 26, 1982.

Subsequently, the Church sold a portion of the remainder of its land to the Deishers. The land conveyed contained a water well that existed prior to the conveyance of property to the State. According to the conveyance, the Church and the Deishers would share the well water.

In 1985, Clarkson Construction, the general contractor, began work on the highway improvement on the easement adjacent to the Deishers' land. As part of the work on KDOT's highway project, Clarkson performed blasting to aid in the removal of material.

Eight years later, in April 1993, the Deishers filed a petition for inverse condemnation against the Kansas Department of Transportation and Michael L. Johnston, Secretary of Transportation alleging that within the prior 2 years, plaintiffs had discovered that the water levels in their well had "gone down to unusable levels of less than 6 feet," while throughout the history of the property the water tables had been about 18-24 feet. The plaintiffs alleged that the cause of the drop in water level was the "construction, continuous use, maintenance and design of U.S. Highway 169" by KDOT and/or their agents. The Deishers further alleged that "the least part of the cause for said problems was due to blasting which took place near Plaintiffs property in 1988 for the purpose of construction." Plaintiffs claimed damages equal to the decrease in fair market value of their property ($100,000) and $50,000 to purchase a truck to carry water to the property.

In December 1994, plaintiff filed an amended petition adding Clarkson Construction as a defendant. In the amended petition, plaintiffs alleged that in "1985-1987," when KDOT contracted to have lighting done on Highway 169 in front of the property owned by the plaintiffs, Clarkson, the general contractor, performed blasting and "[a]s a direct and proximate result of a blasting done by Defendant Clarkson, . . . the water tables of a certain well owned by the plaintiffs have receded to a certain level."

Count I of the amended petition alleged that the actions of KDOT "are of a continuing nature and deprive Plaintiffs of the constitutional right to enjoy their property, and said actions have deprived Plaintiffs of their property rights without compensation, without due process of law and are, in effect, an inverse condem-

nation." (During discovery, plaintiffs' expert was deposed and stated that blasting disturbed the underground strata of rock which served as a conduit for water coming into the plaintiffs' well.)

Count II of the amended petition alleged negligence against Clarkson in the widening of Highway 169 and in blasting related to the widening. Count III alleged Clarkson was strictly liable for damages resulting from conducting an ultrahazardous activity. The tort claims against Clarkson were dismissed because the 2-year statute of limitations had expired.

Subsequently, KDOT filed a motion for summary judgment. KDOT asserted that the 2-year limitation for bringing a tort action had expired prior to plaintiffs' filing their cause of action. The district judge agreed, finding in part:

"5. Plaintiffs do not claim that their well was damaged or disturbed by the blasting. Rather, their expert's opinion is that the blasting disturbed the underground strata of rock which served as a conduit for water coming into their well.

"6. The well lost water immediately following the blasting and has continued to show a lack of capacity to retain water.

"7. This lawsuit was filed sometime in 1993."

The district court then concluded:

"1. Inverse condemnation has been recognized as a cause of action in Kansas. In *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 776 (1973), the Court stated:

'Inverse condemnation actions have long been recognized in Kansas. When land or rights therein are appropriated by a public corporation having rights of eminent domain without first procuring title the owner may waive formal condemnation proceedings and other formal modes of acquisition and sue to recover compensation. The owner may recover all damages which he has sustained by reason of the permanent taking and appropriation of his property.' 211 Kan. at 780.

"2. The right to maintain an inverse condemnation proceeding is rooted in concepts of implied contract. 'When a public entity appropriates and uses property or rights therein, without compensating the owner, an implied contractual obligation arises to pay the owner reasonable value of the property or rights taken without compensation.' *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 706, 594 P.2d 671 (1979).

"3. 'Inverse condemnation is an action or eminent domain proceeding initiated by a person having an interest in realty rather than by the government condemner. It is available when private property has actually been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the

property.' *Lone Star Industries, Inc. v. Secretary, Kansas Department of Transportation*, 234 Kan. 121, 124, 671 P.2d 511 (1983).

"4. A taking, to be sufficient to serve as grounds for an inverse condemnation proceeding, is defined as 'the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides.' *Lone Star*, 234 Kan. at 125.

"5. Actual invasion of the property is not required in order to institute inverse condemnation proceedings. *Ventures in Property I*, 225 Kan. at 708.

"In *Ventures in Property I*, an inverse condemnation was found to have taken place when the city of Wichita refused to approve a plat for an owner of real estate to develop its property because the city had future plans to build a thoroughfare over the same property, and did not want to pay for condemning developed property at such time as it was ready to build the highway.

"Removal of lateral support to the extent that plaintiffs' back yards collapsed and fell to the highway construction below was held to be an inverse condemnation in *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981 (1973), even though the construction never touched or invaded the plaintiffs' property.

"6. Lack of a formal condemnation proceeding is a prerequisite to the institution of an inverse condemnation suit: 'When land or rights therein are appropriated by a public corporation having rights of eminent domain *without first procuring title* the owner may . . . sue to recover compensation.' *Sanders*, 211 Kan. at 780 (Emphasis added). *Accord, Atchison v. State Highway Comm.*, 161 Kan. 661, 171 P.2d 287 (1946).

. . . .

"A thread running through all of the condemnation cases cited above is that an inverse condemnation proceeding is a substitute for a formal condemnation proceeding. It is not a supplement for a formal proceeding that does not yield all of the satisfaction that a landowner desires. For instance, in *Lone Star Industries*, supra, the Supreme Court noted that originally two plaintiffs had filed inverse condemnation proceedings, which had been consolidated at the trial court level and for appeal. Between the time of the filing of the notice of appeal and oral argument, the Secretary of KDOT had instituted formal eminent domain proceedings against one of the two plaintiffs. The Court held that the institution of the formal proceeding rendered the inverse proceeding moot: 'Clearly all elements of damage arising from the taking which are legally compensable will be determined in the eminent domain action, thereby rendering Count I moot as to Crupper.' *Lone Star Industries*, 234 Kan. at 122.

"When there has been a formal proceeding and the landowner suffers additional damages by reason of the method that the work is performed upon the land that has been condemned, the proper way for the landowner to redress his rights is through a tort action. Plaintiffs had available to them a suit sounding in negligence or in strict liability for ultrahazardous activities (*i.e.*, the blasting). They failed to bring their suit within the two years required by law for filing a tort suit. Regardless

of their reason for not filing their tort suit, their inverse condemnation proceeding is subject to summary judgment in favor of the defendant because the property was subject to a prior condemnation proceeding for the same project."

Plaintiffs appealed.

## SUMMARY JUDGMENT

Plaintiffs assert that summary judgment was improper because the district court erred in analyzing the law applicable to inverse condemnation with respect to the facts of this case.

Summary judgment is appropriate when all of the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). When the only question presented is a question of law, summary judgment is proper. *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). To preclude summary judgment, the party opposing the motion must come forward with evidence to establish a dispute as to a fact that is material to the conclusive issues in the case. *Kerns*, 255 Kan. at 268.

## DISCUSSION

Prior Kansas cases have held that inverse condemnation occurred when (1) there has been a physical taking of property, see, *e.g., Ellis v. City of Kansas City*, 225 Kan. 168, 589 P.2d 552 (1979); *In re Central Kansas Electric Coop., Inc.*, 224 Kan. 308, 582 P.2d 228 (1978); or (2) where access rights have been impinged, *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 559 P.2d 771 (1977); and *Brock v. State Highway Commission*, 195 Kan. 361, 404 P.2d 934 (1965); or (3) where rights to lateral support have been violated, *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981 (1973).

The most similar case to the one before us is *Sanders*, a consolidated appeal from summary judgments entered in favor of the State Highway Commission in actions brought by homeowners whose properties adjoined the right-of-way of Interstate Highway 635 in Kansas City, Kansas. In *Sanders*, the homeowners discovered that large portions of their backyards had slid onto the

right-of-way where excavation work was occurring on the adjacent right-of-way of I-635. Where plaintiffs' backyards had been, there remained a large hole or crevice.

Plaintiffs brought an action stating a tort claim and an inverse condemnation claim based upon removal of lateral support to the plaintiffs' land. The district court granted the State's motions for summary judgment. In doing so, it determined the State was protected from suits in tort and nuisance by governmental immunity and that plaintiffs stated no causes of action for inverse condemnation because they did not allege the State had appropriated their property by taking possession or control over it. Thus, any damages by taking were unintended. Sanders appealed.

The *Sanders* court noted that the State Highway Commission was acting in a governmental capacity when it was engaged in the establishment, construction, and maintenance of the state highway system (citing Kan. Const. art. 11, § 9; K.S.A. 68-406 *et seq.*). It observed that plaintiffs' actions, based on tort and negligence, accrued in June 1969, when the damage occurred (citing *Railroad Co. v. Schwake*, 70 Kan. 141, 78 Pac. 431 [1904]). It noted that the effective date of the abolition of the rule of governmental immunity as applied to proprietary enterprises was August 30, 1969 (citing *Carroll v. Kittle*, 203 Kan. 841, 851, 457 P.2d 21 [1969]). The *Sanders* court concluded that the plaintiffs' claims for tort and negligence, which had accrued in June 1969, were barred by the governmental immunity provisions of K.S.A. 1972 Supp. 46-901 *et seq.* (repealed L. 1979, ch. 186, § 33).

The *Sanders* court observed that inverse condemnation claims are recognized in Kansas. It stated that when land or rights therein are appropriated by a public corporation having rights of eminent domain without the public corporation first procuring title, the owner may waive formal condemnation proceedings and other formal modes of acquisition and sue to recover compensation. The owner may recover all damages sustained by reason of the permanent taking and appropriation of his or her property. 211 Kan. at 780.

The *Sanders* court then determined lateral support is a property right and that between adjacent landowners the common-law right

to lateral support is absolute. If either adjacent landowner, in excavating on his or her own premises, disturbs the lateral support of his or her neighbor's land so that it falls away or slides from its position, the one excavating is strictly liable. Unless changed by contract or statute, the only proof necessary for plaintiffs to recover was that the excavating was a direct and proximate cause of the injury to the adjoining land. 211 Kan. at 783. The *Sanders* court concluded that the common-law right to lateral support of natural soil is a valuable right which accompanies the ownership and enjoyment of the land itself. It may not be taken while constructing highway improvements without acquisition and payment, the same as any other right or interest in real property. 211 Kan. at 786.

For additional authority that an action in inverse condemnation is proper, the Deishers cite *Clay v. Missouri Highway and Transp. Com'n*, 951 S.W.2d 617 (Mo. App. 1997). In *Clay*, property owners brought an inverse condemnation action against the Missouri Highway and Transportation Commission and a contractor hired by the Commission to perform work on a highway project, to recover for damage allegedly caused by blasting for the project. They alleged that blasting caused vibrations which created cracks in the aquifer, causing the water table in their well to drop and drastically reduce the water flow in their well. Prior to trial the plaintiffs attempted to amend their petition to include an additional claim for malicious trespass which permitted recovery of double or treble damages. The trial court denied the plaintiff's request to amend the petition. The jury awarded plaintiffs damages against the Commission on a theory of inverse condemnation. The plaintiffs appealed, raising several issues, including the trial court's refusal to submit to the jury a malicious trespass claim against the Commission.

The *Clay* court observed that under Missouri law a malicious trespass claim and inverse condemnation claim could have been brought as separate claims under Missouri law against the Commission in the petition. It found that the only claim alleged in plaintiffs' petition against the Commission was for inverse condemnation. Then, discussing inverse condemnation, the *Clay* court cited *Heins Implement v. Hwy. & Transp. Com'n*, 859 S.W.2d 681

(Mo. 1993), where the Missouri Supreme Court held that when private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation. The Missouri court stated the fact that the nuisance is alleged to have been caused by the public entity's negligence was immaterial. It found that inverse condemnation is the proper remedy whenever a condemning authority takes or damages private property for a public use without just compensation. *Heins*, 859 S.W.2d at 693; *Clay*, 951 S.W.2d at 627.

## CONDEMNATION

Eminent domain, as a legal term and concept, apparently originated in the works of the seventeenth century legal scholar Grotius. See Grotius, De Jure Belli ac Pacis Libri Tres, ch. 20, § VII, ¶ 1 (1625), cited in 1 Thayer, Cases on Constitutional Law, p. 945 (1895), and Nowak, Rotunda & Young, Constitutional Law, p. 438 (1978). It is sufficient to say eminent domain is the right and power of government or lawfully designated authority to take private property for public use without the owner's consent upon payment of just compensation. The right is an inherent power of the sovereign and comes into being with the establishment of government and continues as long as the government endures. However, its exercise may be constitutionally limited.

The Fifth Amendment to the United States Constitution prohibits the taking of private property for public use without just compensation. The Fifth Amendment prohibition is applicable to the states by way of the Fourteenth Amendment. The constitutional prohibition against private property being taken for public use without compensation is codified in K.S.A. 26-513, which states:

"(a) *Necessity*. Private property shall not be taken or damaged *for public use* without just compensation.

"(b) *Taking entire tract*. If the entire tract of land or interest therein is taken, the measure of compensation is the value of the property or interest at the time of the taking.

"(c) *Partial taking*. If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of

the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking.

"(d) *Factors to be considered.* In ascertaining the amount of compensation and damages as above defined, the following factors, without restriction because of enumeration, shall be given consideration if shown to exist but they are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damage under the provisions of subsections (b) and (c) of this section:

1. The most advantageous use to which the property is reasonably adaptable.

2. Access to the property remaining.

3. Appearance of the property remaining, if appearance is an element of value in connection with any use for which the property is reasonably adaptable.

4. Productivity, convenience, use to be made of the property taken, or use of the property remaining.

5. View, ventilation and light, to the extent that they are beneficial attributes to the use of which the remaining property is devoted or to which it is reasonably adaptable.

6. Severance or division of a tract, whether the severance is initial or is in aggravation of a previous severance; changes of grade and loss or impairment of access by means of underpass or overpass incidental to changing the character or design of an existing improvement being considered as in aggravation of a previous severance, if in connection with the taking of additional land and needed to make the change in the improvement.

7. Loss of trees and shrubbery to the extent that they affect the value of the land taken, and to the extent that their loss impairs the value of the land remaining.

8. Cost of new fences or loss of fences and the cost of replacing them with fences of like quality, to the extent that such loss affects the value of the property remaining.

9. Destruction of a legal nonconforming use.

10. Damage to property abutting on a right-of-way due to change of grade where accompanied by a taking of land.

11. Proximity of new improvement to improvements remaining on condemnee's land.

12. Loss of or damage to growing crops.

13. That the property could be or had been adapted to a use which was profitably carried on.

14. Cost of new drains or loss of drains and the cost of replacing them with drains of like quality, to the extent that such loss affects the value of the property remaining.

15. Cost of new private roads or passageways or loss of private roads or passageways and the cost of replacing them with private roads or passageways of like quality, to the extent that such loss affects the value of the property remaining."

Inverse condemnation is an action to obtain compensation for the taking of private property by government which is initiated by

the person having an interest in the private property rather than by the governmental entity. It is available when private property has actually been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the property. In a condemnation or an inverse condemnation action, the question of whether there has been a compensable taking of property is a question of law for the trial court. See *Hudson v. City of Shawnee*, 246 Kan. 395, 403, 790 P.2d 933 (1990); *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, Syl. ¶ 7, 559 P.2d 347 (1977); *Brock v. State Highway Commission*, 195 Kan. at 366. A landowner may file an inverse condemnation claim within 15 years of the action accruing. K.S.A. 60-507. An appellate court's review of questions of law is unlimited, and this court is not bound by the decision of the district court. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

If government imposes a restriction upon property which is too oppressive, so as to deny the owner the use, benefit, and enjoyment of the realty, it may be deemed to have taken the land and be obligated to pay compensation. We discussed general principles of the law relative to eminent domain and inverse condemnation in *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 671 P.2d 511 (1983).

The *Lone Star* court also recognized that before a party may recover compensation, it must establish that the property in question is one in which it has an interest and that there has been a taking. 234 Kan. at 125. This court has previously defined "take" (or "taken") in Kansas eminent domain law to mean the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides. See *Steck v. City of Wichita*, 179 Kan. 305, 313, 295 P.2d 1068 (1956); *Foster v. City of Augusta*, 165 Kan. 684, 690, 199 P.2d 779 (1948).

## TORT LIABILITY

A tort is an action for injury to the rights of another, not arising

on contract. See K.S.A. 60-513(a)(4). It has also been defined as a violation of a duty imposed by law. *Mills v. City of Overland Park*, 251 Kan. 434, Syl. ¶ 4, 837 P.2d 370 (1992). The provisions for governing the limitation of time for commencing civil actions are generally set out in K.S.A 60-501 *et seq*. The limitation for bringing an action for damage to land is governed by K.S.A. 60-513(a)(1), which requires that the action be brought within 2 years. Actions for damage to land are not deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the action accrues when the fact of injury becomes reasonably ascertainable to the injured party. In no event shall the action be commenced more than 10 years beyond the time of the act giving rise to the cause of action. K.S.A. 60-513(b).

The parties failed to cite or discuss an action for damage to land governed by K.S.A. 60-513. A case having facts similar to those in this case is *Olson v. State Highway Commission*, 235 Kan. 20, 679 P.2d 167 (1984). In that case, J.A. Tobin Construction Company (Tobin), in its construction of a new highway, was conducting blasting operations approximately one-eighth of a mile from plaintiff Martha Olson's new home. The blasting began in 1977 and continued until September 1979. In May or June 1978, a hairline crack was discovered in a wall of plaintiff's basement. In March 1980, numerous large cracks were discovered in the foundation wall. On October 29, 1980, Olson filed an action against Tobin and the State Highway Commission (now KDOT) for damages to her real property resulting from acts of negligence during the highway construction project. She alleged that damage to a pond on her property, damage to the foundation and cistern of her new house, and the destruction of fences along part of her land had not become reasonably ascertainable until 1980.

Defendants filed a motion for summary judgment, claiming the 2-year statute for filing negligent tort claims had expired prior to plaintiff filing the action. The district court granted defendants' motion for summary judgment. Olson appealed, claiming her cause of action had not accrued until the act giving rise to the cause of action first caused substantial injury.

The *Olson* court stated that actions for permanent damages caused by negligence to land are governed by the 2-year period of limitations, which begins to run on the date the damage was sustained. K.S.A. 60-513(a)(4), (b). The *Olson* court observed K.S.A. 60-513(b) provides that a cause of action shall not be deemed to have accrued until the act giving rise to the cause of action first causes *substantial* injury, or until the time the fact of injury (inferentially, the fact of substantial injury) becomes reasonably ascertainable to the injured party. *Olson*, 235 Kan. at 26.

The *Olson* court noted that our statutes of limitation were not designed to force injured parties into court at the first sign of injury, regardless of how slight it might be, just because that injury and damages resulting therefrom may be permanent in nature. We have repeatedly held that where the evidence is in dispute as to when the fact of injury first became reasonably ascertainable to plaintiffs, it is an issue for determination by the trier of fact. *George v. W-G Fertilizer, Inc.*, 205 Kan. 360, 366, 469 P.2d 459 (1970). The same is true in determining when substantial injury first occurred. *Thierer v. Board of County Commissioners*, 212 Kan. 571, 512 P.2d 343 (1973). In *Olson*, the district court's grant of summary judgment was reversed, and the case was remanded for further proceedings.

*Olson* is analagous to this case. There, as here, property was damaged by a contractor while doing work for the State. The damages were not a necessary consequence of a taking. Instead, they resulted from the negligence of the State or one acting on behalf of the State.

Condemnation is the taking of property for public use. Inverse condemnation is an action brought by a party whose property is taken for public use without formal condemnation proceedings.

In this case, as in *Olson*, the property damage was not necessary to the taking of property for public use. The State neither needed the Deishers' water nor needed to divert their water. The drop in plaintiffs' water level resulted from a tortious act. Consequently, the district court correctly concluded both that the Deishers' remedy lay in tort, not in inverse condemnation and that plaintiffs'

injury was reasonably ascertainable more than 2 years prior to the time they filed the action; thus, the statute of limitations had run.

Affirmed.