No. 87,548

Butler County Rural Water District No. 8, *Appellee*, v.
David M. Yates and Elizabeth M. Yates, *Appellants*.

64 P.3d 357

Opinion filed March 7, 2003.

*Bradley A. Stout*, of Thompson Stout & Goering, LLC, of Wichita, argued the cause and was on the brief for appellants.

*Ray L. Connell*, of Connell & Connell, of El Dorado, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

KNUDSON, J.: In this condemnation proceeding, the jury awarded the landowners, David M. Yates and Elizabeth M. Yates, $5,000 for the partial taking of their right to enforce a restrictive use covenant against the condemnor, Butler County Rural Water District No. 8 (Water District). The Yates contend that the district court erred in allowing expert witnesses to testify that the fair market value of their property was the same after the taking as before the taking. On our motion, this appeal has been transferred from the Court of Appeals. See K.S.A. 20-3018(c).

We affirm. Under the unique facts of this proceeding, we conclude the district court did not err in permitting the Water District's experts to testify there was no diminution of value as a result of the taking.

The Yates built a home on a 10-acre lot they purchased in a Butler County subdivision. The particular lot they purchased was identified as Lot 7, Towakoni Hills. The Yates' lot and other lots in the subdivision were subject to covenants and restrictions requiring them to be used for residential purposes. The properties to the north of the Yates' lot were zoned commercial, and some of the properties adjacent to the Yates' property were used commercially for mobile home sales and outdoor storage sales. The Yates had arranged for a 3-foot tall earthen berm with trees to be constructed between their property and the commercial properties. The Yates' property was served by a private well and a sewage lagoon.

The Water District acquired Lot 6, located immediately west of the Yates' property, for the purpose of constructing a water tower and other improvements. The Water District sought a special use permit to allow the proposed use, which was granted despite the Yates' objections. The Yates filed suit in Butler County District Court in an effort to enforce the covenants and restrictions and to vacate the special use permit. The Water District responded by adding the Yates' property as a taking in its pending condemnation proceeding.

The appraisers in the administrative condemnation action viewed the Yates' property, held a public hearing, and filed their report, valuing the Yates' restrictive covenant interest at $500. The

Yates appealed the award of the appraisers and requested a jury trial on the issue of compensation and damages.

At the jury trial, Sara Ralston and Richard Jiminez testified in their representative capacities as members of the Board of Directors of the Water District. Walter Sharp, Lewis Simmons, and Fayne Henson testified as expert witnesses on the appraised value of the Yates' real property on behalf of the Water District.

Sharp, Simmons, and Henson each testified that the appraised value of the Yates' property was $240,000 both before and after the Water District condemned the Yates' restrictive covenant interest. According to the Water District's expert witnesses, the damage to the Yates' property from the taking was zero. The Yates' trial counsel's objections to the admission of each expert's testimony, questioning its relevance, and his motions to strike were overruled.

David Yates testified that he would not have built his house at that location had he known that the Water District would erect a water tower on Lot 6. According to David, he had reviewed the covenants and restrictions limiting the Towakoni Hills properties to residential uses prior to his purchase of Lot 7 and considered them to be of great importance. David stated that he paid $319,000 to build his home and believed the value of his property after the taking was $200,000. David testified that he was requesting the jury to award him $119,000 in damages.

Brian Shepherd testified as the Yates' expert witness concerning the appraised value of the Yates' property. Shepherd testified that he conducted an independent study comparing the values of homes in western Butler County with and without restrictive covenants. He concluded that homes with restrictive covenants enjoyed a value of approximately 20% more than those without restrictive covenants. Immediately prior to the taking, he valued the property at $296,800, and immediately after the taking, he valued the property's value to be $235,600. According to Shepherd's analysis, the value of the taking of the protective covenants in question was $61,200.

After deliberations, the jury made its findings and awarded damages to the Yates. First, the jury found that the value of the property before the taking was $250,000 and its value after the taking was

$245,000. Counsel for the Yates objected to these findings, however, on the basis that the $245,000 figure was outside the evidence. The trial court then further instructed the jury that the verdict must be within the range of the testimony of the witnesses and asked the jury to enter a verdict that complied with the requirements of Kansas law. The jury returned with a second verdict which found that the market value of the Yates' property immediately before the taking was $245,000 and immediately after the taking was $240,000. Thus, the jury awarded the Yates a judgment of $5,000 for the taking of their restrictive covenant interest.

The question, as framed by the Yates on appeal, is whether a governmental entity may claim it paid just compensation for the private property it has taken while asserting at trial that the value of the interest taken was zero. The Water District frames the matter as whether the trial judge abused his discretion by admitting the testimony of its three expert witnesses.

The proper remedy for a taking in Kansas is controlled by statute. See K.S.A. 26-513; *In re Condemnation of Land for State Highway Purposes*, 269 Kan. 128, 129-30, 3 P.3d 1268 (2000) (quoting *Small v. Kemp*, 240 Kan. 113, 116, 727 P.2d 904 [1986]) (" 'Where a jury award is not within the requirements of K.S.A. 26-513, the trial court must grant a new trial.' "). Interpretation of a statute is a question of law. An appellate court's review of questions of law is unlimited. *Unwitting Victim v. C.S.*, 273 Kan. 937, Syl. ¶ 1, 47 P.3d 392 (2002). However,

"[w]hen a verdict is challenged for insufficiency of evidence we do not weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal. [Citation omitted.]" *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 633, 1 P.3d 891 (2000).

K.S.A. 26-513 states:

"(a) *Necessity.* Private property shall not be taken or damaged for public use without just compensation.

"(b) *Taking entire tract.* If the entire tract of land or interest in such land is taken, the measure of compensation is the fair market value of the property or interest at the time of the taking.

"(c) *Partial taking.* If only a part of a tract of land or interest is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking.

"(d) *Factors to be considered.* In ascertaining the amount of compensation and damages, the following nonexclusive list of factors shall be considered if such factors are shown to exist. Such factors are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damage under the provisions of subsections (b) and (c) of this section. Such factors are:

(1) The most advantageous use to which the property is reasonably adaptable.

(2) Access to the property remaining.

(3) Appearance of the property remaining, if appearance is an element of value in connection with any use for which the property is reasonably adaptable.

(4) Productivity, convenience, use to be made of the property taken, or use of the property remaining.

(5) View, ventilation and light, to the extent that they are beneficial attributes to the use of which the remaining property is devoted or to which it is reasonably adaptable.

(6) Severance or division of a tract, whether the severance is initial or is in aggravation of a previous severance; changes of grade and loss or impairment of access by means of underpass or overpass incidental to changing the character or design of an existing improvement being considered as in aggravation of a previous severance, if in connection with the taking of additional land and needed to make the change in the improvement.

(7) Loss of trees and shrubbery to the extent that they affect the value of the land taken, and to the extent that their loss impairs the value of the land remaining.

(8) Cost of new fences or loss of fences and the cost of replacing them with fences of like quality, to the extent that such loss affects the value of the property remaining.

(9) Destruction of a legal nonconforming use.

(10) Damage to property abutting on a right-of-way due to change of grade where accompanied by a taking of land.

(11) Proximity of new improvement to improvements remaining on condemnee's land.

(12) Loss of or damage to growing crops.

(13) That the property could be or had been adapted to a use which was profitably carried on.

(14) Cost of new drains or loss of drains and the cost of replacing them with drains of like quality, to the extent that such loss affects the value of the property remaining.

(15) Cost of new private roads or passageways or loss of private roads or passageways and the cost of replacing them with private roads or passageways of like quality, to the extent that such loss affects the value of the property remaining.

"(e) *Fair market value.* 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. The fair market value shall be determined by use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods."

The Yates argue that the Water District's introduction of evidence tending to establish that the property's fair market value remained the same before and after the taking constituted an improper attempt to avoid the obligation to pay just compensation. The Yates contend that such evidence should have been excluded or stricken from the record, and they request this court to remand the matter with instructions to the trial court to enter a verdict within the range of evidence defined by the opinions of value expressed by their witnesses.

The Yates further contend that the fair market value standard for determining just compensation found in K.S.A. 26-513(c) did not properly reflect the value of the interest taken and that another standard for measuring just compensation should have been used. In proposed jury instructions, however, the Yates requested that the jury be instructed that the proper measure of just compensation was the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property immediately after the taking. Counsel for the Yates told jurors in closing argument, "The law is clear to value this property to determine the amount of compensation; to value the property immediately before and immediately after." A party may not invite error and then complain of that error on appeal. *NEA-Topeka v. U.S.D. No. 501,* 269 Kan. 534, 547, 7 P.3d 1174 (2000). Therefore, this court will not consider the Yates' argument that the trial court should have employed an alternate measure of just compensation to the fair market value standard.

The Water District maintains that the legislature clearly defined the means used to measure just compensation in K.S.A. 26-513 (c) and (e). It argues that because its expert appraisers found no damage to the fair market value of the property as a whole does not equate to a finding that the restrictive covenants had no value.

According to the Water District, the Yates are in effect asking this court to rewrite the statute to require any appraisal to value damages to the property at $1 or more.

"Eminent domain, as a legal term and concept, apparently originated in the works of the seventeenth century legal scholar Grotius. See Grotius, De Jure Belli ac Pacis Libri Tres, ch. 20, § VII, ¶ 1 (1625), cited in 1 Thayer, Cases on Constitutional Law, p. 945 (1895), and Nowak, Rotunda & Young, Constitutional Law, p. 438 (1978)." *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 770, 958 P.2d 656 (1998).

" 'Eminent domain' is the right and power of a governmental entity to take private property for public use without the owner's consent upon payment of just compensation. The requirement of a physical taking has been modified such that where a government has imposed significant restrictions on private property through eminent domain or an exercise of police power, a taking may be found and the government required to pay compensation. [Citation omitted.]" *Garrett v. City of Topeka*, 259 Kan. 896, 906, 916 P.2d 21 (1996).

"The right is an inherent power of the sovereign and comes into being with the establishment of government and continues as long as the government endures, but its exercise may be limited by the constitution. [Citations omitted.]" *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 124, 671 P.2d 511 (1983).

"The Fifth Amendment to the United States Constitution prohibits private property being taken for public use without just compensation. While the Kansas Constitution does not contain an identical provision, with the exception of Art. 12, § 4, governing corporations, the Fifth Amendment prohibition is applicable to the states by way of the Fourteenth Amendment. [Citations omitted.] Further, the constitutional prohibition is codified in Kansas in K.S.A. 26-513(a) which provides private property shall not be taken or damaged for public use without just compensation. [Citations omitted.]" *Lone Star Industries, Inc.*, 234 Kan. at 123-24.

This court has previously stated that "[e]minent domain is not a civil action but rather a creature of statute. Those exercising the right of eminent domain 'shall exercise such right in a manner set forth in K.S.A. 26-501 to 26-516, inclusive.' K.S.A. 26-101." *City of Wichita, Kansas v. Eisenring*, 269 Kan. 767, 773, 7 P.3d 1248 (2000).

K.S.A. 26-513(c) dictates

"[i]f only a part of a tract of land or interest is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

Nothing in the language of the statute places a restriction on the value obtained by calculating the difference between the fair market value of the entire property before and after the taking.

We conclude, under the unique facts of this case, that the condemnor's experts' testimony opining a difference of zero dollars in the before and after value of the partially taken property was properly admitted and legally sufficient as a measure of just compensation under K.S.A. 26-513(c).

"The major issue in a condemnation action is the condemned property's fair market value. [Citation omitted.] Thus, any competent evidence bearing upon market value generally is admissible including those factors that a hypothetical buyer and seller would consider in setting a purchase price for the property. [Citation omitted.] Considerable discretion is vested in the trial court in admitting or rejecting evidence of value, and the latitude accorded to the parties in bringing out collateral and cumulative facts to support value estimates is left largely to the discretion of the trial court. [Citations omitted.]" *Eisenring*, 269 Kan. at 773-74.

Because, under K.S.A. 26-513(c), a difference of zero in the before and after value of the entire property may qualify as a proper measure of damages in a partial taking, the Water District's experts' testimony was relevant for the purpose of assigning a value of just compensation and, thus, properly admitted by the trial court. The Yates' assertion fails that as a matter of law the Water District's experts' testimony was not competent. Consequently, under our limited standard of review, the jury's verdict will not be disturbed.

In its brief, the Water District attempts to raise the issue of whether it is required to compensate landowners for the taking of restrictive covenant rights arising from the public's need for water. The Water District asks this court to rule as a matter of law that where there is a need for public drinking water, it has no legal duty to compensate the holder of a negative covenant. This is not an issue that was raised by the Yates on appeal, nor was it raised by means of a cross-appeal by the Water District.

The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *Wasson v. United Dominion Industries*, 266 Kan. 1012, 1018-19, 974 P.2d 578 (1999).

"When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which such appellee complains, the appellee shall, within 20 days after the notice of appeal has been served . . . give notice of such appellee's cross-appeal." K.S.A. 2002 Supp. 60-2103(h). K.S.A. 2002 Supp. 60-2103(h) requires an appellee to file a cross-appeal in order to present adverse rulings for appellate review. See *James v. City of Pittsburg*, 195 Kan. 462, 463, 407 P.2d 503 (1965); *Chavez v. Markham*, 19 Kan. App. 2d 702, 709, 875 P.2d 997 (1994), *aff'd* 256 Kan. 859, 889 P.2d 122 (1995). We conclude the issue of whether the Water District is required as a matter of law to compensate landowners for the taking of restrictive covenant rights is not properly before this court.

Affirmed.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned.∎