No. 96,229
No. 96,981

ESTATE OF ARCHIE KIRKPATRICK, *Appellee*, v. THE CITY OF OLATHE, KANSAS, *Appellant*, and COOK, FLATT & STROBEL, ENGINEERS, P.A., *Defendant*.

(215 P.3d 561)

Opinion filed September 4, 2009.

*James A. Gottschalk*, of the Law Offices of Donald B. Balfour, of Chesterfield, Missouri, and *Leonard A. Hall*, assistant city attorney, of Olathe, argued the cause, and *Diane S. Mills*, of the Law Offices of Donald B. Balfour, of Overland Park, was with *Leonard A. Hall* on the briefs for appellant.

*Nancy J. Crawford*, of Smithyman & Zakoura, Chartered, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This inverse condemnation appeal comes before us on the landowner's petition for review of the decision by the Kansas Court of Appeals in *Estate of Kirkpatrick v. City of Olathe*, 39 Kan. App. 2d 162, 178 P.3d 667 (2008). The landowner claimed that his home was substantially damaged as a result of the City of Olathe's

construction of an adjacent roundabout, which altered the flow of groundwater in the area. The district court awarded the landowner compensation under K.S.A. 26-513. The Court of Appeals reversed, concluding that mere damage to real property is not compensable under Kansas eminent domain law unless the damage is necessary to the completion of a public improvement project. 39 Kan. App. 2d at 169-70.

The facts giving rise to this action and its disposition are accurately recounted in the Court of Appeals opinion:

"Archie Kirkpatrick owned and resided in property that sits on the northwest corner of the intersection at Ridgeview Road and Sheridan Avenue when the City approved a plan to improve that intersection with the construction of a roundabout. As part of the intersection improvement, the City took by eminent domain 355 square feet of Kirkpatrick's property for a permanent road right-of-way and 426 square feet for a temporary construction easement. Kirkpatrick did not appeal the compensation awarded in the eminent domain proceeding.

"The City began construction of the roundabout in early 2000 and completed it in July 2001. According to the district court, the City became aware of 'potential drainage problems' soon after it began construction and concluded the water problems would subside after construction was complete. In late June 2001, [Wayne DuVall,] a friend of Kirkpatrick's, excavated near the house to determine the cause of the basement water problems at Kirkpatrick's residence. During excavation, DuVall noticed that the hole he dug was dry from the surface down 4 feet, but from there, wet to the bottom of the approximately 9-foot hole. DuVall installed a second sump pump but apparently did not fix the basement water problems, and water continued to enter the house after it rained. Kirkpatrick hired the May Development Company (May) to do additional foundation repair to his house in the summer of 2003. Over the course of the summer, May installed another sump pump in the house, jacked up the house, and installed piers and steel supports along the back foundation. During early August 2003, the basement floor cracked.

"In September 2003, Kirkpatrick filed a claim under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, against the City. Kirkpatrick alleged the City had damaged or taken his property 'due to [the] change of grade or disruption of natural underground barriers as a result of the construction of public improvements located at the intersection of Ridgeview Road and Sheridan Avenue . . . .' Because the City did not respond to Kirkpatrick's claim within 120 days, Kirkpatrick filed his petition against the City on January 21, 2004, and later amended to include the project engineer, the construction contractor, and the project inspector as defendants after these parties were brought in through third-party actions. After Kirkpatrick's death in September 2005, Kirkpatrick's estate (Kirkpatrick or Estate) was substituted as plaintiff.

"The City filed two summary judgment motions in which it argued that it was immune from liability for the tort claims under the KTCA and that the property Kirkpatrick alleged was taken without compensation was acquired in the City's condemnation proceeding. It does not appear that it ruled on the first summary judgment motion, but the district court denied the second motion. The district court rejected the City's second motion for summary judgment after concluding that whether the City's diversion of groundwater into Kirkpatrick's property was a natural consequence of the improvement or resulted from a negligent deviation from the approved design was a substantial material fact that precluded summary judgment.

"The court later held a bench trial on Kirkpatrick's action. In its journal entry of judgment, the district court concluded that the City conformed to the necessary standard of care in designing the roundabout. Further, the court concluded that no party had negligently deviated from the approved plan, and thus no party negligently caused damage to Kirkpatrick's property. The court then analyzed the inverse condemnation claim and concluded that the City partially took Kirkpatrick's property by damaging it without paying just compensation for its taking.

. . .

"Based on the court's findings, Kirkpatrick orally moved for attorney fees and offered to give the court a copy of *Bonanza, Inc. v. Carlson*, 269 Kan. 705, 9 P.3d 541 (2000). After considering the parties' motions and arguments, the court awarded Kirkpatrick fees under K.S.A. 58-3502 over the City's objections." 39 Kan. App. 2d at 163-65.

The City appealed, arguing that its actions in constructing the roundabout did not constitute a compensable taking of the Estate's property. The Court of Appeals agreed and reversed. 39 Kan. App. 2d at 170. We granted the Estate's petition for review; we now reverse the decision of the Court of Appeals and affirm the judgment of the district court.

## Court of Appeals Decision

In reaching its decision, the Court of Appeals considered the Kansas Eminent Domain Procedure Act (EDPA), K.S.A. 26-501 *et seq.*, as well as Kansas case law regarding inverse condemnation. The Court of Appeals noted a "fundamental tension" between the statutory language of the EDPA, which recognizes that a compensable taking includes "property damaged" during the course of a public improvement project, and this court's case law, which has held that damage is only compensable if it is "necessary" to the completion of such a project. *Estate of Kirkpatrick*, 39 Kan. App.

2d at 167-69. Compare K.S.A. 26-513(a) with *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 772, 958 P.2d 656 (1998). Despite the express provision of the statute relating to "property damaged," the Court of Appeals concluded it was bound to follow the "controlling Supreme Court authority" holding "that mere damage to an adjoining property is not a compensable taking unless the damage was necessary to the completion of the public use project." 39 Kan. App. 2d at 169. The Court of Appeals concluded that

"the City excavated adjacent land and changed the grade in constructing the roundabout, but no property or property right was taken. Moreover, the City may have caused more water to invade Kirkpatrick's property than before the construction, but any such invasion or diversion of water was not necessary to the public improvement." 39 Kan. App. 2d at 169.

We granted the Estate's petition for review to clarify the apparent discrepancy between the plain language of the EDPA and our case law.

## DISCUSSION AND ANALYSIS

This court has long recognized that "the right to take private property for a public use is inherent in the state." *State, ex rel. v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 438, 296 P.2d 656 (1956). Nevertheless, the State's power of eminent domain is limited by both federal and state law. In particular, the Fifth Amendment to the United States Constitution, made applicable to the states by way of the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."

Since the enactment the EDPA in 1963, procedures governing the exercise of eminent domain in Kansas have been defined by statute. See L. 1963, ch. 234, sec. 13. Notable to our discussion here, K.S.A. 26-513 commences with a codification of the Fifth Amendment, providing that "[p]rivate property shall not be taken or damaged for public use without just compensation." K.S.A. 26-513(a).

Ordinarily, eminent domain proceedings are initiated by the condemning authority to determine the extent of the property

taken and the compensation due under EDPA and the United States Constitution. See, *e.g.*, *Miller v. Glacier Development Co.*, 284 Kan. 476, 499, 161 P.3d 730 (2007). Inverse condemnation proceedings, such as those giving rise to the present appeal, are initiated by the party having a property interest (instead of the condemning authority) and are available when private property has been taken for public use without the initiation of formal condemnation proceedings by the government. *Kau Kau Take Home No. 1 v. City of Wichita,* 281 Kan. 1185, 1189, 135 P.3d 1221 (2006), *cert. denied* 549 U.S. 1265 (2007); see *Nat'l Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City,* 272 Kan. 1239, 1245, 38 P.3d 723 (2002) (inverse condemnation action "available only where private property has been actually taken for public use without formal condemnation proceedings and it appears that there is no intention or willingness of the taker to bring such proceedings").

To succeed on a claim for inverse condemnation, a party must establish that he or she has an interest in real property affected by a public improvement project and that a taking has occurred. The question of whether there has been a compensable taking is one of law. *Korytkowski v. City of Ottawa,* 283 Kan. 122, 128, 152 P.3d 53 (2007). The question we confront in this case is whether the damage caused to the Estate's property by the City's construction of the roundabout was compensable under our eminent domain law.

*Actions Requiring Compensation under Kansas Law*

K.S.A. 26-513(a), which defines the actions for which compensation is required under Kansas eminent domain law, states: "Private property shall not be taken *or damaged* for public use without just compensation." (Emphasis added.) This language has remained unchanged since the EDPA's original enactment in 1963. See L. 1963, ch. 234, sec. 13. Under the plain language of the statute, compensation is required for both physical takings of property interests and "damage" to private property that results from a public improvement project.

The remainder of K.S.A. 26-513 contemplates that damage to private property resulting from a public improvement project may require compensation under Kansas law. Most notably, K.S.A. 26-513(d) provides a nonexclusive list of factors that should be taken into consideration when determining the compensation that is due to a landowner. Among other items listed, the statute includes the following factors that must be considered when calculating a condemnation award: "[l]oss of trees and shrubbery"; "[c]ost of new fences or loss of fences and the cost of replacing them with new fences of like quality"; "[d]amage to property abutting on a right-of-way due to change of grade"; "[l]oss of or damage to growing crops"; and "[c]ost of new drains or loss of drains and the cost of replacing them with drains of like quality." K.S.A. 26-513(d)(7), (8), (10), (12), and (14). In these instances, the requirement for compensation arises not from a physical taking of the land but rather from *damage* to the property that "affects the value of the property remaining" after the government action. See K.S.A. 26-513(d)(7), (8), and (14).

The statutory recognition that compensation may be required for damage to property—in the absence of a physical taking—is consistent with decisions of the United States Supreme Court, which hold that compensation under the Fifth Amendment must be provided for damage to property that is the "direct result" of the governmental authority's action and "constitute[s] an actual, permanent invasion of the land." See *Sanguinetti v. United States*, 264 U.S. 146, 149, 68 L. Ed. 608, 44 S. Ct. 264 (1924).

Despite the plain language of K.S.A. 26-513, however, the Court of Appeals correctly noted that this court's case law has in most instances precluded recovery for damage to property in inverse condemnation actions. Instead, this court has limited recovery for property damage in inverse condemnation to cases where the "damage was . . . *necessary* to the taking of the property for public use" and has narrowly interpreted this "necessity" requirement to mean that the condemning authority "needed" the damage to occur in order to complete the project. (Emphasis added.) See *Deisher*, 264 Kan. at 774. Otherwise, we have limited compensable takings to instances where the condemning authority has "ac-

quir[ed] . . . possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides. [Citations omitted.]" 264 Kan. at 772.

The conclusion that compensation is only required where a transfer of property rights has occurred or where property damage is needed to complete a public improvement project is not based in the language of the EDPA, however. Rather, the definition comes from this court's case law predating the adoption of the eminent domain statutes.

One of the first cases to define a compensable taking in this way was *Sester v. Belvue Drainage District*, 162 Kan. 1, 173 P.2d 619 (1946), which involved an action by a landowner for damages suffered as a result of the widening of a drainage district. The *Sester* court held that the landowner's damages did not constitute a "taking" under the Fifth Amendment to the United States Constitution:

"The right to sue a public body under the constitutional guaranties does not extend to cases where land is not actually taken but is only indirectly or consequentially damaged. There is a great difference between intentional taking of land in the exercise of governmental power and injury resulting to land as a consequence therefrom. A consequential injury is not a taking of private property for public use within the meaning of the Fifth Amendment." 162 Kan. at 6.

Despite this statement, the *Sester* court recognized that its analysis might differ if the Kansas Legislature were to enact a statute making property damage compensable. 162 Kan. at 8-9. But while "[s]ome states [had] enacted statutes which extend the state's liability to the point of allowing recovery for damages caused by public use, . . . Kansas [had] not." 162 Kan. at 9. Because Kansas had not adopted a constitutional provision or statutory scheme indicating otherwise, *Sester* held that damage resulting from a public improvement project was not compensable under eminent domain. 162 Kan. at 8-10.

This exclusion of property damage from the definition of a compensable taking was repeated 2 years later in *Foster v. City of Augusta*, 165 Kan. 684, 199 P.2d 779 (1948). In that case, several landowners brought an inverse condemnation action for flood dam-

age to their property that resulted from the city's building and maintaining a levee. The *Foster* court concluded that this type of property damage was not compensable in eminent domain. 165 Kan. at 691. To arrive at this conclusion, the court noted:

"A study of our statutes and decisions discloses the word 'take' or 'taken,' as used in our law of eminent domain, means the acquiring of possession and the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides." 165 Kan. at 690.

The *Foster* court again emphasized that "[o]ur legislature is free . . . to determine . . . what is meant by the word 'taking,' and what shall be compensated for by reason of the taking." 165 Kan. at 690. In the absence of a legislative decree, however, the court held that "[o]wners of other property nearby or adjoining that which is taken are not entitled to receive any compensation, though in fact they may sustain some loss or injury, such being regarded as consequential and *damnum absque injuria*." 165 Kan. at 691. See also *Steck v. City of Wichita*, 179 Kan. 305, 313, 295 P.2d 1068 (1956) (quoting *Foster's* definition of "taking").

Justice Hoch, joined by Justice Wedell, dissented from the majority's conclusion in *Foster* that property damage is not compensable in eminent domain, writing:

"I am not prepared to say that there can be no 'taking' in the constitutional sense except as to property the title of which is acquired under eminent domain. And more particularly am I not willing to say now that in the absence of specific statutory provision therefor, 'owners of other property nearby or adjoining that which is taken (by condemnation under eminent domain) are not entitled to receive any compensation though in fact they may sustain some loss or injury, such being regarded as consequential and *damnum absque injuria*.' I am not unmindful of the many cases in which recovery has been denied for damages denominated 'consequential.' Without quibbling as to the appropriateness of the term 'consequential' as used in some cases, I think it may fairly be said that such cases relate in most instances to damages incidental and more or less remote in character, as for example, the added inconvenience for ingress and egress resulting to other property owners. But where land is substantially damaged directly as the planned or inevitable result of a project such as flood control or diversion, I do not subscribe to a broad and unqualified rule that in no case can there be recovery in the absence of a statute specifically providing therefor." *Foster*, 165 Kan. at 694-96 (Hoch, J., dissenting in part).

In 1963, the Kansas Legislature adopted the EDPA, including K.S.A. 26-513(a), which states that "[p]rivate property shall not be taken *or damaged* for public use without just compensation." (Emphasis added.) L. 1963, ch. 234, sec. 13. It would appear that by enacting this language, the legislature was responding to *Foster* and *Sester* by clearly stating that just compensation must be provided for property damage resulting from public improvement projects. See *Foster*, 165 Kan. at 690; *Sester*, 162 Kan. at 9. The statutory language requiring compensation for property taken *or* damaged (not merely taken *and* damaged) further illustrates the legislature's intent to adopt the broader definition of eminent domain outlined by Justice Hoch in his *Foster* dissent.

This court's decisions following the adoption of the EDPA—and most significantly, of K.S.A. 26-513(a)—for the most part have not acknowledged this statutory language, however. See *Kau Kau Take Home No. 1*, 281 Kan. at 1189 ("A compensable taking requires the government to acquire possession as well as the right of possession and control of tangible property to the exclusion of the former owner.").

For example, in *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981 (1973), landowners brought an inverse condemnation action against the Kansas Highway Commission when a highway project adjacent to their back yards resulted in the soil crumbling and sliding onto the right-of-way. The district court found that the erosion of the soil was caused by the highway project, which had removed lateral support for the landowners' properties. Nevertheless, the district court granted the Commission's motion for summary judgment, concluding that the Commission's actions did not constitute a taking under our state's case law.

This court reversed the district court's decision on appeal, finding that the removal of lateral support constituted a taking under Kansas law. 211 Kan. at 786. The court did not reach this decision based on the language of the EDPA, however. In fact, the *Sanders* court did not cite the EDPA at all. Rather, the court found that "[t]he common law right to lateral support of natural soil is a valuable right which accompanies the ownership and enjoyment of the land itself" and "may not be taken while constructing highway

improvements without acquisition and payment, the same as any other right or interest in real property." 211 Kan. at 786. Thus, the court reached the conclusion that the damage in *Sanders* was compensable by defining the loss of lateral support as a "taking"—not by way of the plain language of K.S.A. 26-513(a).

A few years after deciding *Sanders*, the court employed a similar analysis in *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 594 P.2d 671 (1979). At issue in *Ventures* was whether a city's zoning regulations could so restrict a landowner's use of his or her property as to require compensation under the United States Constitution. The *Ventures* court held that pervasive regulation and zoning that deprive a landowner of reasonable use of his or her land requires just compensation. See 225 Kan. at 705-07, 713-14. The court noted in its decision that the trend among states was to conclude that "direct physical invasion of property is not required under the eminent domain section of the constitution for a property owner to be entitled to compensation for *damaging* his [or her] property for public use. [Citation omitted.]" (Emphasis added.) 225 Kan. at 708. Nevertheless, as in the court's previous decision in *Sanders*, *Ventures* failed to cite K.S.A. 26-513 or the EDPA.

Because the discussion of compensation for property damage in *Ventures* is limited to the court's analysis of approaches taken by other jurisdictions rather than the EDPA's binding statutory language, this court's subsequent decisions limited the *Ventures* court's holding to its facts: namely, that pervasive zoning may so limit the use of property as to constitute a taking. See *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 129, 671 P.2d 511 (1983) ("*Ventures* does not radically relax the concept of 'taking,' as asserted by the plaintiff herein. Rather, *Ventures* characterizes an exception to the general rule that mere plotting and planning in anticipation of a public improvement does not constitute a taking or damaging of the property affected *unless* such plotting and planning is coupled with a legal restriction on the landowner's use of the property.").

Instead of recognizing the statutory language of K.S.A. 26-513(a), which plainly states that compensation must be paid for

property damage resulting from a public improvement project, each of these decisions adhered to pre-EDPA caselaw defining " 'take' (or 'taken') in Kansas eminent domain law to mean the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner." 234 Kan. at 125 (citing *Steck* and *Foster*). This disregard for the EDPA provisions has led to legal acrobatics in many of our recent inverse condemnation decisions, illustrated most pointedly by the court's opinion in *Deisher*, 264 Kan. 762.

*Deisher* presented the question of whether an action for damage incurred during a public improvement project is subject to the 15-year statute of limitations for eminent domain proceedings or the 2-year limitations period for negligence. See 264 Kan. at 772-73. The plaintiffs in *Deisher* claimed that blasting associated with a highway improvement project adjacent to their home caused a shift in the groundwater on their property, resulting in a loss of water in the plaintiffs' well. The district court dismissed the case, finding that the suit sounded in negligence and that the 2-year statute of limitations for negligence actions had run. This court affirmed, holding that actions for property damage that is not necessary to the completion of a public improvement project are subject to the 2-year limitations period for tort claims. 264 Kan. at 775. To reach this conclusion, the *Deisher* court relied primarily on language in this court's case law defining compensable takings and on *Olson v. State Highway Commission*, 235 Kan. 20, 679 P.2d 167 (1984).

*Deisher* began its analysis with a discussion of condemnation actions in Kansas. Unlike many of the cases decided after the adoption of the EDPA in 1963, the *Deisher* court quoted all of K.S.A. 26-513 in its opinion, including the language stating that "[p]rivate property shall not be taken or damaged for public use without just compensation." K.S.A. 26-513(a); see *Deisher*, 264 Kan. at 770. Other than quoting this language, however, the court made no reference to the import of the statutory provisions. Instead, immediately after quoting K.S.A. 26-513, *Deisher* reverted to the pre-EDPA definition of compensable takings, stating: "This court has previously defined 'take' (or 'taken') in Kansas eminent domain law to mean the acquiring of possession as well as the right of posses-

sion and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides." 264 Kan. at 772 (citing this court's pre-EDPA decisions in *Steck* and *Foster*). *Deisher* made no reference to the obvious discrepancy between these two definitions of which actions require compensation.

Turning to the area of tort liability, *Deisher* concluded that under this court's previous decision in *Olson*, actions for damages to real property must be raised in tort, not inverse condemnation. *Deisher*, 264 Kan. at 774-75. *Olson* involved an action in negligence and strict liability brought by landowners against the Kansas Department of Transportation and a construction company for damage to real property caused by a highway construction project. Because the plaintiffs brought only tort (not inverse condemnation) claims, none of the parties disputed that the 2-year statute of limitations defined by K.S.A. 60-513(a)(4) applied. See *Olson*, 235 Kan. at 23. Rather, the question presented in *Olson* was whether the discovery doctrine codified in K.S.A. 60-513(b)—which states that the limitations period commences when the fact of the injury becomes reasonably ascertainable—applied in that case. 235 Kan. at 23-24. Contrary to *Deisher*'s reliance on *Olson*, the *Olson* court did not hold that actions for damage to real property can only be raised in tort or that such actions are always subject to the 2-year statute of limitations.

Ultimately, *Deisher* concluded that damage to real property is not compensable in eminent domain if "the property damage was not necessary to the taking of the property for public use." 264 Kan. at 774. In other words, if "damages [are] not a necessary consequence of a taking" but instead "result[] from the negligence of the State or one acting on behalf of the State," the only remedy for those damages is an action for negligence, which is subject to the 2-year statute of limitations. 264 Kan. at 774. Because "[t]he State neither needed the Deishers' water nor needed to divert their water" to complete the highway project in question, the *Deisher* court held that the plaintiffs' case was correctly dismissed as being barred by the 2-year statute of limitations for tort actions. 264 Kan. at 774-75.

At least one recent opinion of this court has relied upon *Deisher* for the proposition that damage to real property is only compensable under eminent domain if it is "necessary" to the completion of a public improvement project. See *Kau Kau Take Home No. 1,* 281 Kan. at 1190 ("The alleged damage to Appellants' property caused by the contractors driving over the property was not necessary to the completion of the City's project. The alleged damage was caused by the contractor's negligence."). Contrary to this court's decision in *Deisher* and its similar statements in subsequent cases, however, K.S.A. 26-513(a) does not state that damage to property is only compensable under eminent domain if the condemning authority "needs" the damage to occur in order to complete the project.

Inverse condemnation claims stem from the recognition that the government from time to time fails to initiate a traditional eminent domain proceeding but nevertheless takes actions that require compensation. K.S.A. 26-513 deals entirely with the compensation requirement—whether in a traditional eminent domain proceeding or in inverse condemnation—and with the logistics of calculating a compensation award. Our review of the plain language of K.S.A. 26-513 demonstrates that the legislature has made a determination that in order to protect the constitutional and statutory rights of Kansas citizens, it is *necessary* for the State or other condemning authority to provide "just compensation" for property that is "taken or damaged for public use." K.S.A. 26-513(a). The term "[n]ecessity" as a subheading within K.S.A. 26-513(a) refers to this statutory and constitutional requirement for just compensation.

We note that the *Deisher* holding has an additional ramification in the case before us. Here, the district court concluded that the workers employed by the City who constructed the roundabout did not act negligently. The court also found, however, that the change in grade associated with the new roundabout directly caused the alteration in groundwater flow that damaged the Kirkpatrick's (and subsequently, his Estate's) property. If we were to apply the holding in *Deisher* to this case, even though the Estate's property damage was caused by the condemning authority in con-

junction with a project on a public roadway, the Estate would have no recourse at law.

The plain language of K.S.A. 26-513(a) states that a condemning authority must provide just compensation for real property that is "taken or damaged for public use." The most basic principle of statutory interpretation is that "the intent of the legislature governs if that intent can be ascertained." *Williamson v. City of Hays,* 275 Kan. 300, 305, 64 P.3d 364 (2003). For this reason, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" 275 Kan. at 305. In order to give full effect to K.S.A. 26-513 and the other provisions of the EDPA, we disapprove of our prior caselaw that fails to take into account the statutory requirement that just compensation be provided for property damaged for public use.

We note, however, that not all property damage is compensable in eminent domain. For example, this court has long held that although rental income produced by the land itself may be used to determine the value of the real property subject to a condemnation action, a decrease in profits from a business conducted on the real estate is not compensable. See *City of Bonner Springs v. Coleman,* 206 Kan. 689, 694, 481 P.2d 950 (1971). Likewise, other items of personal property are not compensable in condemnation actions unless the property is a fixture. See *City of Wichita v. Eisenring,* 269 Kan. 767, 783, 7 P.3d 1248 (2000). In either case, the reason for the exclusion is that damage to personal property is not part and parcel to the condemnation of the real estate in question, but rather is a tangential consequence of that condemnation.

For this reason, the majority of jurisdictions that require compensation for property damaged in association with public improvement projects exclude *consequential* damages, finding instead that damage must be the direct, natural, or inevitable result of the governmental action to be compensable. See, *e.g., Sanguinetti,* 264 U.S. at 149-50 (stating that damage to property is not compensable in eminent domain if it is not "the direct or necessary result" of the condemnation action or "within the contemplation of or reasonably to be anticipated by the government"); *Plunske v. Wood,*

171 Conn. 280, 284, 370 A.2d 920 (1976) (concluding that, in determining damages in a condemnation action, "[t]he court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking"); *Dahlman v. Milwaukee,* 131 Wis. 427, 439-40, 111 N.W. 675 (1907) (clarifying that removal of building's lateral support due to re-grading of a street was not "a mere consequential damage" but instead required compensation). *American Jurisprudence* summarized this trend as follows:

"Although there are certain indirect or consequential damages which may arise from a condemnation for which there can be no recovery, many states provide for compensation where property has been damaged through eminent domain. The constitutional provisions requiring compensation for damage have been given a liberal construction, and a landowner is entitled to compensation for damages to property whether or not there is direct physical injury to property." 26 Am. Jur. 2d, Eminent Domain § 128, p. 536.

These authorities are fully in accord with the standard set forth by Justice Hoch in his *Foster* dissent over 60 years ago, where he distinguished between cases involving property damage "incidental [to a governmental undertaking] and more or less remote in character"—which he would find do not require compensation—and cases where "land is substantially damaged directly as the planned or inevitable result" of a public improvement project. *Foster,* 165 Kan. at 696 (Hoch, J., dissenting in part). We adopt this interpretation.

In order for damage to real estate to be compensable under K.S.A. 26-513(a) and the other provisions of the EDPA, that damage must be substantial and must be the planned or inevitable result of government action undertaken for public benefit. Such a standard is in keeping with the legislature's statutory enactments as well as our well-established rule that tangential or consequential damages do not require compensation in condemnation actions. Damage that is tangential or consequential to a government action is more appropriately addressed in the realm of tort law. See *Sanguinetti,* 264 U.S. at 150.

*Application to the Instant Case*

In the case before us, the district court concluded based on the evidence that the alteration in the flow of groundwater on the Estate's property was the direct result of the City's actions in constructing the roundabout adjacent to the Estate's property. The district court also found that the City was aware of the alteration in the groundwater during its construction of the roundabout, but the City decided to take no action to remedy that change. These findings are supported by substantial evidence in the record. Because the damage sustained by the Estate's real property was the inevitable result of the change in groundwater level, the district court correctly found that this damage was compensable in an inverse condemnation action.

The City argues that even if this court determines that compensation may be required for damage to property in some cases, no compensation should be required here because, according to the City's brief on appeal, the damage to the Estate's property was temporary and subject to abatement. The City asserts that the damage to the Estate's property could have been alleviated by the installment of a foundation drain. Nevertheless, the City recognizes that "the trial court's findings of fact clearly reflect the court's belief that *the City* should have installed a foundation drain ($15,000.00 to $18,000.00) for Plaintiff in 2001." (Emphasis added.) For support of its argument, the City relies primarily on *Bowen v. City of Kansas City*, 231 Kan. 450, 455, 646 P.2d 484 (1982).

This claim fails for a number of reasons. First, we note that *Bowen* involved an action for nuisance—not for inverse condemnation—where different principles govern recovery. Moreover, contrary to the City's assertions, this court has not limited compensation in eminent domain to cases where a taking or other governmental encroachment has been permanent. For example, we have long recognized the need for compensation for temporary easements required to complete public improvements. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 210 P.3d 105 (2009). Finally, the City's argument fails to apprehend the nature of our inquiry in this inverse condemnation action. The

direct cause of the damage to the Estate's property—and the basis for the district court's compensation award—is the roundabout itself, which permanently altered the flow of groundwater on the Estate's property. There is no question that the roundabout is a permanent structure.

We pause to emphasize the scope of our decision in this case relating to the district court's condemnation award. In its brief on appeal, the City claimed that the court's condemnation award to the Estate was erroneous because damage is not compensable in Kansas under eminent domain. Today, we clarify that under the plain language of K.S.A. 26-513(a), compensation was required for damage to the Estate's property that was the substantial, direct, and inevitable result of the construction of the roundabout in question.

At no time during the pendency of this appeal does the City or the Estate argue error in the amount of the compensation award itself or in the appropriateness of the manner in which the district court assessed that award. Issues not raised on appeal are deemed abandoned and are not before us for review. *Roy v. Young,* 278 Kan. 244, 248, 93 P.3d 712 (2004). Therefore, although we affirm the district court's award of damages to the Estate in the amount of $17,000, we make no comment on the appropriateness of that amount or the calculation of that award.

The district court correctly determined that the City was required to provide just compensation for damage to the Estate's property directly caused by the City's construction of a roundabout. The district court's award of $17,000 to the Estate in this inverse condemnation action is therefore affirmed.

## ATTORNEY FEES

Because we affirm the district court's condemnation award in favor of the Estate, we must also review the court's decision to award the Estate its attorney fees and litigation expenses. After the court announced its judgment in favor of the Estate on its inverse condemnation claim at trial, the Estate moved for costs and attorney fees. The district court took this request under advisement and asked the parties to submit written argument on the issue. In its

written memorandum, the Estate indicated that between October 2003 and January 2006, it had been billed $86,738 in legal fees and $13,738 in expenses; it also included itemized billing statements to this effect.

The district court ultimately awarded the Estate attorney fees in the amount of $37,375 and costs in the amount of $13,291.75.

On appeal, the City claims that the district court was without statutory authority to award attorney fees in this case. The City also argues that the Estate's posttrial request for attorney fees was unfair and caught the City by surprise; that the attorney fee amount was unreasonable; and that the award was not supported by substantial competent evidence.

*Standard of Review*

In Kansas, a party's request for attorney fees cannot be granted absent statutory authority or agreement applicable to the parties. *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445 (1998). The question of whether the district court had the authority to award attorney fees under a particular statute or agreement is a question of law over which appellate review is plenary. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). In cases where a district court has authority to award attorney fees, that decision is reviewed for an abuse of discretion. A party challenging such an award must show that no reasonable person would agree with the district court's decision or that the decision was not supported by substantial competent evidence. *Davis v. Miller*, 269 Kan. 732, 750-51, 7 P.3d 1223 (2000).

*Discussion*

The district court based its award of attorney fees in this case primarily on our decision in *Bonanza, Inc. v. Carlson*, 269 Kan. 705, 9 P.3d 541 (2000). *Bonanza* involved a successful inverse condemnation action against the Kansas Department of Transportation (KDOT) stemming from a highway improvement project. This court interpreted the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Federal Act), 42 U.S.C. § 4601 (1994) *et seq.*, in conjunction with Kansas statutes

and KDOT regulations, to require the payment of the landowners' attorney fees and expenses. In particular, *Bonanza* held that because KDOT had adopted regulations pursuant to the Federal Act specifically requiring the payment of attorney fees in condemnation actions, those regulations authorized the district court to award attorney fees to the landowners in that case. 269 Kan. at 720-21.

In the case before us, the district court concluded—purportedly based on *Bonanza*—that because the City received federal funding for the underlying public improvement project (which involved, among other items, the construction of the roundabout in question), it was required to comply with the provisions of the Federal Act. The district court noted, as *Bonanza* also recognized, that the Federal Act requires agencies that receive federal funding for improvement projects to make assurances that they will reimburse attorney fees and other litigation expenses for successful inverse condemnation actions.

The City argues that the district court's reliance on *Bonanza* was unfounded, as that decision was based primarily on the language of the KDOT regulation authorizing attorney fees in condemnation actions. The City correctly points out that KDOT is not a party to this case and was not associated with the construction of the roundabout in question.

It is true that our decision in *Bonanza* was based primarily on the KDOT regulation in that matter. Contrary to the City's arguments on appeal, however, this fact does not alone establish that the district court was without authority to award attorney fees. The landowners in *Bonanza* limited their argument regarding attorney fees to the state statutes and regulations governing that case, and our decision did not exceed the scope of their claims. See 269 Kan. at 714 (noting that "the landowners contend that their rights originate in state law which by reference adopts federal regulations"). Thus, our decision in *Bonanza* is inapposite to the question presented here—whether the district court in this case had authority to award attorney fees and other litigation expenses.

The provision of the Federal Act that guided the district court's decision in this case is 42 U.S.C. § 4655(a)(2) (2006), which states in relevant part:

"(a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—

. . . .

"(2) property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654 of this title."

Notable to our discussion, 42 U.S.C. § 4654(c) (2006) states that condemning authorities must "reimburse" successful plaintiffs in inverse condemnation actions for their "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."

In 1973, the Kansas Legislature adopted the Relocation Assistance for Persons Displaced by Acquisition of Real Property Act (Kansas Act), K.S.A. 58-3501 *et seq.*, for the specified purpose of "authoriz[ing] compliance with" the Federal Act. K.S.A. 58-3501. K.S.A. 58-3502 states that the State of Kansas, its agencies, or its political subdivisions "shall" comply with the requirements of the Federal Act in order to receive "federal financial assistance . . . to pay all or part of the cost" of a public improvement program. K.S.A. 58-3502(4) requires the State and its agencies and political subdivisions involved in affected projects to "pay or reimburse property owners for necessary expenses as specified in" 42 U.S.C. §§ 4653 and 4654 (2006).

There is no question that the City received federal funding to complete the public improvement project at the heart of this case, including the construction of the roundabout adjacent to the Estate's property. The only way that the City could have received this funding under the Federal Act was to make "satisfactory assurances" that the affected property owners would be reimbursed their attorney fees and other litigation costs associated with successful claims for inverse condemnation. See 42 U.S.C. § 4654. The City had the authority to make these assurances to the federal government under the Kansas Act. See K.S.A. 58-3506.

The City argues that even if it did receive federal funding, the district court was without authority to award attorney fees and lit-

igation expenses in this case because the Estate failed to provide any specific city ordinance authorizing the payment of attorney fees in inverse condemnation actions (similar to the KDOT regulation discussed in *Bonanza*) or any evidence of the particular assurances the City provided to the federal government. We disagree.

This court has long recognized that attorney fees may be awarded pursuant to a statute *or agreement*. See *Hawkinson*, 265 Kan. at 575. Here, the fact that the City received federal funding for its improvement project acts as compelling circumstantial evidence that the City agreed to pay the costs of litigation (including attorney fees) associated with successful inverse condemnation actions arising from the project.

A number of other jurisdictions have come to similar conclusions that the agreement between the federal government and the condemning state, state agency, or state political subdivision—defined by the Federal Act and evidenced by the acceptance of federal funding—gives state courts authority to award attorney fees and other litigation expenses. See *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 675, 137 P.3d 1110 (2006) ("Because Sisolak is a property owner who was successful in his inverse condemnation action, the plain terms of the Relocation Act allowed the district court to award reasonable attorney fees and costs."); see also *Wolfson v. City of St. Paul*, 558 N.W.2d 781, 783 (Minn. App. 1997) ("The federal statute dictates that an agency will not approve any federally funded project unless assurances are received that 'property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654 of this title.' . . . The federal statute dictates that federally funded projects must comply with the federal statute, including the section on reimbursement of litigation expenses.").

We agree with the reasoning articulated in these cases and conclude that the district court had authority to award the Estate attorney fees and litigation expenses for its successful inverse condemnation claim in this case.

The City argues that even if the district court had the authority to award attorney fees and costs, it abused its discretion when it did so here because (1) the manner in which the request for at-

torney fees was made did not give the City fair notice of the issue; (2) the attorney fee award was unreasonable; and (3) the amount of the award was not supported by substantial evidence.

These arguments are without merit. Because the City had made previous assurances to the federal government that it would reimburse attorney fees and other litigation expenses in order to receive federal funding at the outset of the public improvement project, it cannot now claim surprise when a request for such reimbursement was made. Furthermore, the district court arrived at the amount in question after receiving considerable briefing and argument by the parties, coupled with lengthy and detailed descriptions of the claimed legal expenses. The district court was careful to explain how it arrived at the award amount in question, which was roughly $50,000 less than the amount originally requested by the Estate. We cannot say that the attorney fees and litigation expenses awarded are unreasonable in light of the complexity and duration of this case.

The district court's award of $37,375 in attorney fees and $13,291.75 in other litigation expenses is affirmed.

For the reasons stated in this opinion, the decision of the Court of Appeals reversing the district court is reversed. The decision of the district court is affirmed.

McFARLAND, C.J., and LUCKERT, J., not participating.
HILL, J., and LARSON, S.J., assigned.