NOT DESIGNATED FOR PUBLICATION

Nos. 118,219
118,381

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JUDITH K. EMERSON,
*Appellee*,

and

TERRY LYNN EMERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed July 20, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Chan P. Townsley*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Stephen M. Turley*, of Wagle & Turley, LLC, of Wichita, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

PER CURIAM:  Judith K. Emerson and Terry Lynn Emerson were divorced on January 31, 2017. The district court divided the parties' marital property, assigned values to the parties' assets and debts, ordered Terry to pay Judith $40,570 to "equalize" their net assets, and ordered spousal maintenance. Terry sought an alteration or amendment to the final judgment, claiming that the district court erred by miscalculating the equalization payment, overvaluing an asset it assigned to Terry, failing to consider Judith's pension in its spousal maintenance order, and awarding Judith attorney fees. For the reasons set

1

forth below, we are not persuaded that the district court committed error with regard to valuing Terry's asset or in failing to consider Judith's pension in its spousal maintenance order. But we do find the district court erred in calculating the equalization payment and in ordering attorney fees without supporting evidence of those fees. Accordingly, we affirm in part, reverse in part, and remand with directions for the district court to correct the equalization payment to accurately reflect the values assigned to the parties' net assets by the court, as specifically set forth in our analysis below. Further, we deny both parties' motions for appellate attorney fees.

FACTS

After almost 37 years of marriage, Judith filed a petition to divorce Terry in January 2016. Terry answered and filed a counterpetition for divorce. Terry and Judith each sought an equitable division of their marital property.

The district court held a trial on October 5 and 11, 2016, at which Judith had counsel and Terry represented himself. Before trial, Judith and Terry each offered the court a list of their marital assets and debts, which the court included in the pretrial conference order. Judith's list proposed values for some of the assets and debts. The transcript from the trial is not in the record on appeal.

On October 11, 2016, the district judge ruled from the bench, granting the parties' divorce. The judge divided the assets and debts between the parties and assigned them values, largely following Judith's proposed values. The judge then calculated each party's net assets by adding their total assets and subtracting their total debts. Because Terry's net assets were greater than Judith's, the judge ordered Terry to pay to Judith an "equalization payment"—one half of the difference between the parties' net assets. The judge explained his calculation on the record, ultimately ordering Terry to pay Judith $40,570 to equalize the parties' net assets. In addition, the judge ordered Terry to pay Judith spousal

2

maintenance. The written journal entry of judgment and decree of divorce ultimately was filed January 31, 2017.

On January 17, 2017, Terry e-mailed the district court seeking "the Court's indulgence in further clarifying the equalization payment." Terry asserted his belief that the calculation of the equalization payment was derived using incorrect numbers and suggested that the court had undervalued the marital residence that was assigned to Judith. Judith's counsel replied that "the equalization payment is fine and is stated in the record." The court responded by warning the parties that e-mail was not the proper forum to resolve this dispute.

Terry retained counsel, who filed a motion under K.S.A. 2017 Supp. 60-259(f), which allows a party to move to alter or amend a judgment within 28 days after the entry of judgment. On February 28, 2017, the last day permitted by statute, Terry's counsel attempted to e-file the motion with a filing fee at the direction of the district court clerk's office. The following day, counsel received notice that the electronic filing system rejected the motion because it did not require a filing fee. Counsel successfully filed the motion without a fee on March 1, one day past the deadline. Terry's counsel went to the district courthouse and obtained permission for the late filing from the Chief Judge of the district court. Judith responded, arguing that Terry's motion was untimely and should be dismissed.

On June 7, 2017, the district court held a hearing on the motion. Terry argued that there were several errors in the court's judgment and sought a correction to the journal entry. The court denied the motion, holding it lacked jurisdiction to hear the motion because it was filed out of time. Judith requested attorney fees in the amount of $1,500 for responding to Terry's motion. The district judge granted the fees, stating, "I am going to order attorney's fees in the amount of $1500 on this motion, because it was clearly out of time. And the case law is clear, that I lack jurisdiction to extend the time limits."

Terry filed a second motion to reconsider the district court's ruling on its motion to alter or amend the judgment, arguing the first motion was timely. On July 18, 2017, the district court held a hearing on the second motion. The court reversed its earlier decision that the motion was untimely and considered the merits of Terry's arguments. Terry primarily argued that the court miscalculated the equalization payment, explaining that the court erred in adding up the assets assigned to Judith. Due to this error, Terry claimed the equalization payment was too high. Terry also argued that the court incorrectly valued a Boeing settlement check, which the court assigned to Terry. Terry claimed the court should have only counted the net income he received from the settlement, not the gross amount of the check, which included several amounts that were withheld. Finally, Terry argued that the court erred when it did not assign a value to Judith's pension plan from which she was not yet receiving payments. Terry asserted the court, in considering the issue of spousal maintenance, should have considered the fact that Judith was eligible to start receiving payments from her pension plan but had not opted to do so.

The district court was not persuaded by Terry's arguments that it had erred in valuing the Boeing settlement check and Judith's pension, holding that it was not going to revisit evidentiary arguments that were previously determined at trial. On the issue of the equalization payment, the court held in its written order:

> "[T]he Court leaves open the possibility of amending the amount of the equalization payment based upon [Terry's] insistence that the Court made an error in calculation. Despite numerous requests to [Terry] to explain the error, [Terry] is unable to demonstrate the alleged error to the Court's satisfaction and/or the Court is simply unable to understand [Terry's] argument. Over the objection of [Judith], the Court grants [Terry] time to demonstrate the Court's error to [Judith]. The Court states that, if there was an error in calculation, the error should be easily explained and apparent to both parties."

Terry also asked the district court to reverse its earlier award of Judith's attorney fees, but the district court upheld the fees.

4

Following the district court's order, Terry's counsel sent Judith a letter attempting to explain the alleged miscalculation. Terry's counsel suggested in the letter that if Judith did not understand his explanation then Judith should explain how the numbers used by the court were correct. The parties ultimately informed the court they were unable to resolve the matter through private discussion. In its August 22, 2017 final ruling, the district court stated:

"On July 18, 2017, the Court denied [Terry's] motion but, over the objection of [Judith], granted [Terry] time to demonstrate the alleged error by the Court in the calculation of the equalization payment. The parties have communicated to the Court that they are unable to resolve the matter. [Judith] states that [Terry] has suggested that 'maybe you [Judith] can demonstrate how the numbers are correct.' [Terry] states that he can 'prove his position' but agrees that [Judith] 'has not shown that the numbers are correct.' [Terry] has inexplicably failed to take advantage of the opportunity provided by the Court. [Judith] does not bear the burden in this matter. The Court, having previously found [Terry's motion] to be without merit and a request to retry the case, denies [Terry's] motion."

ANALYSIS

On appeal, Terry argues that the district court erred in denying his motion to reconsider and/or alter or amend the judgment because the court: (1) miscalculated the equalization payment; (2) assigned an incorrect value to his Boeing settlement check; (3) failed to value Judith's pension plan; and (4) erroneously awarded Judith attorney fees.

The purpose of K.S.A. 2017 Supp. 60-259(f) is to allow the district court to correct previous errors. *In re Marriage of Willenberg*, 271 Kan. 906, 910, 26 P.3d 684 (2001). Appellate courts review challenges from the denial of a motion to reconsider for an abuse of discretion. An abuse of discretion occurs when the district court takes an action based on an error of law, an error of fact, or an otherwise unreasonable decision. *AkesoGenX*

5

*Corp. v. Zavala*, 55 Kan. App. 2d 22, 30-31, 407 P.3d 246 (2017). Using this standard of review, we address each of Terry's arguments in turn.

1. *Miscalculation of the equalization payment*

Terry's primary argument on appeal is that the district court abused its discretion by incorrectly calculating the equalization payment it ordered Terry to pay Judith. The court determined the parties' net assets based on the values it announced; the net assets assigned to Terry had a greater value than those assigned to Judith. So the court ordered Terry to pay Judith one half of the difference between the parties' net assets to equalize the value between them. Terry does not take issue with the process used by the court but instead contends the judge miscalculated Judith's total assets to equal $212,293; he claims that the value of the assets assigned to Judith actually totaled $245,723. Due to the error, Terry complains the court ordered him to overpay Judith to equalize the net assets.

In order to evaluate Terry's argument, this court must review the district court's ruling on the assignment and value of the parties' assets and debts. In its ruling from the bench, the judge announced:

> "Regarding the property. As I went through this there were some that I should point out that in considering this I found the testimony of [Judith] in this case to be more helpful and instructive and more believable in this case. There was actually an attempt to value things.
> "The Court was concerned about there was evidence that things were hashed out inappropriately. So as we turned to the division of value there was Westar stock, the value was unknown, the Meritrust credit savings union[,] the TECU Credit Union paycheck, the Bank of America checking, the Bank of America savings and phone shares value, all the values were unknown and so I simply did half to each party on those items as it's in the proposed division of value.
> "On the Boeing lawsuit pension, my understanding, and the evidence is, and it was never really contradicted is that there has been a check—a check issued.

"There was argument from [Terry] about whether or not [Judith] is a part of this lawsuit. Her testimony was she wasn't, but [Judith] valued that at 448, so that's the value I put on it and I put that all on husband's side because he has it, he—the evidence is that he got the check.

"The Ameritrade, [Judith] valued it at $7,625 so—so did I. And I put that on the husband's side.

"On the Impala—for the car values, I took [Judith's] values. She testified that she made an effort to figure out a proper evaluation and her evaluations are not unreasonable. I found that some of the evaluations of [Terry] were unreasonable. So the 2009 Impala at—for $3,800 would go on the wife's side. The 2000 truck for $3,600 I put that on the husband's side, and for the '65 Chevy truck the evidence was, is that there was an offer to buy that out right [in] cash for $6,500 and that's the testimony that was given. So I valued that at $6,500 on the husband's side.

"The exercise equipment, I do think was overvalued so I just made it a $1,000.00 and put that on the husband's side.

"For the Goldman—for the Goldman Sachs I split that in half just like [Judith] did, and also for the SSGA retirement, I split that in half also.

"The Spirit retirement, and the Spirit pension were unknown. So for the Spirit retirement I did half. There is the Spirit Pension value plan, there was nothing to put a value on, although that would be on the husband's side. And then the E*TRADE—it was $1,280 for the husband.

"[Judith's] pension, I did not—there was no value put on that and the personal property I just—I'm going to adopt the—how [Judith] put out that personal property in Exhibit 17, so I'll just adopt that. I didn't put a value to the property and neither did either of the parties.

"So for assets that would be—Oh, and for the house, I understand all the arguments about the house, but I put all the value in the House since it would be with [Judith] with [Judith]. So the 14720 goes to her.

"I adopted and used her values. It was a Butler County [appraiser who] came out, he evaluated the home. I found the testimony about this barn from [Judith] to be more believable, and the testimony was that this barn is really of no value. It's actually a hindrance . . . that property, and devalues the property, because it's just a structure that wasn't completed and is really just rusted out steel bars, that maybe could be turned

7

into—but the testimony was . . . that really it would have to be completely and totally replaced.

"So you have $159,530 for the husband, $212,293 wife.

"Regarding the [IRS] debt, it's $80,000 and I appreciate the arguments about how they want to keep inconsiderate, but it's a debt and I just split that 40 on each side.

"The Butler County treasurer, I put that debt to [Judith], $12,300, the Bank of America home equity, I put to [Judith] at 127, I put the Cancun timeshare and $9,431 to the husband, [Terry], and then the credit card debt, which was Barclay Master— MasterCard, Chase, Discover card, Capital One. I put that all on the wife's side of the ledger, [Judith's] side.

"The 401k loan for 13792 I put that on husband's side, and I did consider the six grand for this loan. It was just testimony that they borrowed money, and so I did not value the 6,000.

"So that comes to $62,223 in debt for the husband, $197,000 in debt for the wife, [Judith].

"So $96,307 minus $15,293 is $81,014 divided by two and that would be $40,570 equalization payment, [Terry] to [Judith]. I did not give tax treatment because there was—there may be no need to take the Pensions out."

For most of the assets and debts, the district judge adopted Judith's valuations, which she prepared for the pretrial conference order. For example, with regard to Terry's Goldman Sachs and SSGA retirement plans, the judge did not recite the values, but rather he stated that he "split that in half just like [Judith] did." Judith's pretrial conference valuations listed the Goldman Sachs retirement account as $32,723 for each party and the SSGA at $62,000 for each party. Similarly, the court assigned to Judith all of the credit card debts, which Judith valued in the pretrial conference order as: Barclay MasterCard ($2,500); Chase ($3,500); Discover ($6,600); and Capital One ($5,100). Finally, regarding the Boeing settlement check, the judge adopted Judith's assertion that it was worth $44,800.

In summary, the following charts list Judith's assets and debts and Terry's assets and debts, with the values announced or referenced by the district judge:

8

| Judith Asset | Value | Judith Debt | Value |
| --- | --- | --- | --- |
| Residence | $147,020 | IRS debt | $40,000 |
| Impala | $3,800 | BOA Mortgage | $127,000 |
| 1/2 Goldman Sachs | $32,723 | Butler Co. Treasurer | $12,300 |
| 1/2 SSGA | $62,000 | Barclay MasterCard | $2,500 |
| Boeing Pension | No value assigned | Chase | $3,500 |
| Personal property | No value assigned | Discover | $6,600 |
| | | Capital One | $5,100 |
| **Total Assets** | **$245,543** | **Total Debt** | **$197,000** |

| Terry Asset | Value | Terry Debt | Value |
| --- | --- | --- | --- |
| TD Ameritrade | $7,625 | IRS | $40,000 |
| 2000 Chevy Truck | $3,600 | Cancun timeshare | $9,431 |
| 1965 Chevy Truck | $6,500 | 401(k) loan | $13,792 |
| Exercise Equipment | $1,000 | | |
| 1/2 Goldman Sachs | $32,723 | | |
| 1/2 SSGA | $62,000 | | |
| Spirit Pension | No value assigned | | |
| E*Trade | $1,280 | | |
| Personal property | No value assigned | | |
| Boeing settlement check | $44,800 | | |
| **Total Assets** | **$159,528** | **Total Debt** | **$63,223** |

According to the court's assigned values, the sum of the value of Judith's assets was $245,543. Terry is correct that the district judge miscalculated Judith's assets when it concluded they totaled $212,293.

The district judge's calculation error affected the equalization payment it ordered Terry to pay. The judge calculated the equalization payment by splitting the difference between Terry's and Judith's net assets. The sum of the value of Judith's debts is $197,000. Subtracting Judith's total debt from her total assets, the value of Judith's net assets is $48,543. The sum of the value of Terry's assets is $159,528, and his debts total $63,223. Subtracting Terry's total debts from his total assets, the value of Terry's net assets is $96,305. The difference between Terry's net assets ($96,305) and Judith's net assets ($48,543) is $47,762. Half of $47,762 is $23,881, which is the amount the court should have ordered Terry pay to equalize the parties' net assets. Therefore, the court's calculation of $40,570 required Terry to overpay by $16,689.

Judith argues that the record is insufficient for this court to review this issue because the trial transcript is not in the record. In addition, Judith argues that Terry should not be allowed to reference the transcript of the district court's bench ruling because that transcript was originally prepared as an exhibit to be presented to the district court for purposes of a motions hearing. Judith argues that the transcript was therefore not "clearly designated 'for appeal purposes'" as required by Supreme Court Rule 3.03(a) (2018 Kan. S. Ct. R. 22). We are not persuaded by Judith's argument. Terry did request the transcript for appeal purposes; he requested "Transcript of Oral Proceedings—Exhibit #2 at the hearing on June 7, 2017" be added to the appellate record. The hearing transcript is properly in the appellate record, and this court may refer to it.

Judith also argues that the district court was not required to make an equal division of the parties' marital estate. But Terry is not arguing that the district judge erred in failing to order an equal division of the parties' assets and debts. Rather, the judge ordered Terry to pay Judith an amount to "equalize" their net assets, but the judge miscalculated the amount of that payment according to his own formula and assigned values.

10

The district judge made an error in calculating the equalization payment, causing Terry to overpay Judith by $16,689. Accordingly, we reverse the district court's decision to deny Terry's K.S.A. 2017 Supp. 60-259(f) motion to alter or amend the judgment and remand to the district court so it can correct the equalization payment to accurately reflect the values assigned to the parties' net assets by the court.

2. *Boeing settlement check*

Terry next argues that the district court improperly valued the Boeing settlement check by valuing it as an asset of Terry's that was worth $44,800. Although the gross value of the check was $47,517.28, Terry argues the court only should have valued it as an asset actually worth $29,864.61 because $17,652.67 was deducted for Social Security, Medicare, and federal and state tax withholdings.

This court cannot resolve this issue based on the record on appeal. When considering a motion to alter or amend, a district court is limited to considering matters that were before the court when it entered its original judgment. *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939-40, 159 P.3d 215 (2007) (district court properly denied motion to alter or amend where issue raised in K.S.A. 60-259[f] motion was not before trial court when it entered summary judgment). Because the trial transcript is not in the record on appeal, we cannot determine whether Terry challenged the district court's valuation of the check before it entered judgment. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. See Supreme Court Rule 3.03; Supreme Court Rule 6.02(a)(4)-(5) (2018 Kan. S. Ct. R. 34); *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

Moreover, valuation of property is a question of fact determined by the court based on evidence presented at trial. See *Hutson v. Mosier*, 54 Kan. App. 2d 679, 690,

11

401 P.3d 673 (2017) ("[T]he determination of the value of property—whether real or personal—is generally a question of fact and not a question of law."). Without a record, we cannot review the evidence supporting the district court's decision or the court's conclusion about how it valued the settlement check.

3. *Judith's pension plan*

In his next issue on appeal, Terry claims the district court erred in failing to assign a value to Judith's pension plan, which ultimately affected the court's decision regarding an award of spousal maintenance. The district judge ordered Terry to pay Judith spousal maintenance for 111 months in the amount of $1,600, which was 25% of the difference between Judith's monthly income and Terry's monthly income. Terry contends this award failed to take into account the value of Judith's pension plan, in which Judith was fully vested and from which she could elect to begin receiving payments at any time. Terry argues the court should have considered the potential income from Judith's pension when it determined the amount of spousal maintenance it ordered Terry to pay.

Like Terry's argument about the Boeing settlement check, this issue is an evidentiary issue that cannot be reviewed without the trial record. See *Friedman*, 296 Kan. at 644-45 (burden is on party making claim to designate facts in record to support claim; without such record, claim of error fails). As a result, this court finds that the district court did not abuse its discretion in denying Terry's motion to reconsider its ruling on Judith's pension plan.

4. *District court's award of attorney fees to Judith*

Terry argues that the district court erred when it awarded Judith attorney fees in the amount of $1,500, stemming from Terry's first motion to alter or amend the judgment.

Terry contends that court abused its discretion because Judith presented no evidence to support her request for attorney fees.

K.S.A. 2017 Supp. 23-2715 permits costs and attorney fees to be awarded to either party in a divorce case "as justice and equity require." When the court has authority to grant attorney fees, its decision is reviewed for an abuse of discretion. *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 572, 215 P.3d 561 (2009); *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 972, 255 P.3d 34 (2011). The district court has wide discretion to determine the amount and the recipient of attorney fees. If the award is supported by substantial competent evidence, this court will not reweigh the testimony or evidence presented or reassess the credibility of witnesses. *In re Marriage of Strieby*, 45 Kan. App. 2d at 973; *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427 (2001).

Judith's counsel requested attorney fees at the June 7, 2017 hearing on Terry's first motion to alter or amend the judgment "for having to argue this motion." The district judge held that the motion was untimely because it was filed one day after the 28-day period to file a motion to alter or amend a judgment under K.S.A. 2017 Supp. 60-259(f). Judith's attorney stated:

> "We are requesting attorney fees in the amount of 1500, for arguing this motion today. This motion has caused a great deal of harm to my client based on some of these false allegations and some of these ridiculous claims that are merely just dragging this matter on for my client. And what's her choice? She has to defend this motion.
> "We believe that there should be a sanction against Mr. Emerson for filing this out of time, making false statements in his motion, and making these claims that are in my opinion, your Honor, completely unfounded and ridiculous."

The judge granted Judith's request for $1,500 in attorney fees because the motion was untimely. The judge also stated that Terry's attorney could have filed the motion

under K.S.A. 2017 Supp. 60-260, which must be filed "within a reasonable time." There was no testimony or evidence presented on the record supporting the amount of the fee award.

At the July 18, 2017 hearing to reconsider the district court's decision on the earlier motion to alter or amend, the judge reversed his prior finding that Terry's motion to alter or amend the judgment had been untimely filed. The judge considered the merits of the motion and denied all of Terry's claims, with the exception of the claim regarding miscalculation of the equalization payment. The judge granted Terry additional time to demonstrate the miscalculation to Judith and present it to the court.

At this point, Terry asked the judge to reverse its award of Judith's attorney fees from the prior hearing. The judge denied Terry's request, holding:

> "I am not changing my orders on attorney fees. It is $1500 in attorney's fees, because all of this is a tremendous waste of time.
>
> "If it was a simple calculation error that you could show a reasonable person—which, I'm just going to assume Mr. Hawley is—saying, The judge added these numbers wrong.
>
> . . . .
>
> "So the motion is granted, to the extent that there was an error in the calculation. That is a—the parties know how to calculate, and they know how to calculate equalization payments based upon the findings. So, that should be something the parties could give to one another and figure out.
>
> "I will award attorney's fees for the reason that I have already stated. I do believe that this was a matter that could have easily been resolved, and [Judith] wouldn't have had to make arguments that it was a late filing if they would have known the information that was available to [Terry] back on March, that it was a mistake."

Terry argues that the district court abused its discretion in ordering attorney fees because Judith presented no evidence to support the request as required. We agree. Upon

14

review of the record, we find no testimony or other documentation to substantiate the reasonableness of Judith's attorney fees. "Fees which are not supported by 'meticulous, contemporaneous time records' identifying the specific tasks being billed should not be awarded." *Davis v. Miller*, 269 Kan. 732, 748, 7 P.3d 1223 (2000).

In *Davis*, the Kansas Supreme Court urged district courts to consider the eight criteria in Rule 1.5(a) of the Kansas Rules of Professional Conduct in determining the reasonableness of attorney fees. 269 Kan. at 751. Those criteria are:

"(1)     [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3)     the fee customarily charged in the locality for similar legal services;
"(4)     the amount involved and the results obtained;
"(5)     the time limitations imposed by the client or by the circumstances;
"(6)     the nature and length of the professional relationship with the client;
"(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8)     whether the fee is fixed or contingent." Rule 1.5(a) (2018 Kan. S. Ct. R. 294).

There is no statement in the hearing transcript or journal entry indicating that the judge applied the Rule 1.5(a) factors to the facts of this case to determine that $1,500 was a reasonable award for attorney fees. Rather, the court merely adopted the amount requested by Judith's counsel. There is no evidence in the record, let alone substantial competent evidence, to support the request for an award of $1,500 in attorney fees, and the district judge did not consider the factors under Rule 1.5(a) as applied to the facts of this case. As such, the judge's award of $1,500 in attorney fees constituted an abuse of discretion. For this reason, we reverse and set aside the award of attorney fees.

5. *Request for attorney fees incurred in litigating this appeal*

After the briefs were submitted, both Judith and Terry filed timely motions requesting an award of attorney fees for the costs incurred in litigating this appeal. Both parties attached affidavits from counsel to support their respective motions. Both affidavits examined the reasonableness factors under Rule 1.5(a) as applied to the work done for their respective clients. Appended to the affidavit submitted by Judith's attorney was a timesheet that described in detail each of the tasks worked on and the number of hours spent on each of those tasks at an hourly rate of $250, for a total of $7,052. Although there was no detailed timesheet appended to the affidavit submitted by Terry's attorney, the affidavit itself stated that counsel's services are normally provided at a rate of $300 per hour but that counsel pursued this appeal on Terry's behalf under a flat fee arrangement of $5,000. The affidavit went on to state that counsel spent 20 hours filing the appeal and preparing the initial brief and spent another 8 hours preparing the reply brief.

The parties' requests attorney fees were made under Supreme Court Rule 7.07(b)(1) (2018 Kan. S. Ct. R. 50) which allows this court to award attorney fees for services on appeal in a case where the district court had the authority to award attorney fees. In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 2017 Supp. 23-2715. Since the district court had authority to grant attorney fees, this court has authority to award attorney fees for services on appeal.

Terry presented four issues for decision in his appeal; he prevailed on two of those issues and was unsuccessful on the other two. As a general rule, this court is hesitant to award appellate attorney fees to a party that does not fully prevail on appeal. *Richardson v. Murray*, 54 Kan. App. 2d 571, 588, 402 P.3d 588 (2017), *rev. denied* 307 Kan. 988 (2018). Having reviewed the pleadings and attachments, as well as the relevant factors set

16

forth in Kansas Rules of Professional Conduct (KRPC) 1.5(a) (2018 Kan. S. Ct. R. 294), we conclude the parties should bear the burden of paying their own attorney fees and expenses incurred in litigating this appeal. Accordingly, both Judith's and Terry's motions for attorney fees on appeal are denied.

Affirmed in part, reversed in part, and remanded with directions for the district court to correct the equalization payment to accurately reflect the values assigned to the parties' net assets by the court, as specifically set forth in this opinion.